548 F.Supp. 123 (1982)
B & B SALVAGE & RIGGING, INC., Plaintiff,
v.
M/V NORTH BEND, her engines, tackle, apparel, furniture, etc., in rem, Defendant.
No. 81-1628A(C).
United States District Court, E. D. Missouri, E. D.
September 27, 1982.
Theodore J. Williams, Jr., Shepherd, Sandberg & Phoenix, St. Louis, Mo., for plaintiff.
Michael O'Keefe, Thompson & Mitchell, St. Louis, Mo., for defendant.

MEMORANDUM
MEREDITH, District Judge.
This matter is before the Court on the parties' cross-motions for summary judgment. For the reasons set forth below, defendant's motion for summary judgment will be granted and plaintiff's motion will be denied.
Plaintiff brings this action in rem against the vessel M/V North Bend seeking a maritime lien on the vessel pursuant to 46 U.S.C. § 971. Defendant contends that this Court lacks jurisdiction over the action and that no maritime lien may arise under 46 U.S.C. § 971.
The relevant facts in this case are not disputed. On January 14, 1981, St. Louis Ship, Division of Pott Industries, Inc. ("St. Louis Ship") agreed to construct a motor vessel to be used to tow barges on the inland waterways of the United States. Upon completion, the vessel was to be delivered to the purchaser for acceptance at Wickliffe, Kentucky. The vessel M/V North Bend was constructed between January 1981 and July 2, 1981.
In March of 1981 plaintiff negotiated and contracted with the prospective charterer of *124 the vessel ("RTC")[1] to outfit the new vessel with rigging. The parties agreed that the plaintiff would withhold delivery of the rigging until the vessel was near completion.
Plaintiff delivered the rigging to St. Louis Ship on July 1, 1981. On July 2, 1981, the vessel left the dock of the St. Louis Ship shipyard and travelled to the Gateway Arch for publicity photographs. The vessel returned to the builder's shipyard several hours later. At that time, St. Louis Ship placed the rigging on board the North Bend and then piloted it to Wickliffe, Kentucky for the purchaser's inspection, approval and execution of the Bill of Sale. The vessel was, in turn, accepted by RTC for delivery under the terms of the Charter agreement. Prior to July 2, 1981, the vessel had no license, name or official number and was not authorized to travel on the inland waterways of the United States.
Plaintiff seeks to impose a maritime lien on the M/V North Bend based on the contract it entered into in March of 1981 while the vessel was under construction. The rigging supplied under the contract was to outfit the vessel for the purpose for which she was constructed  towing barges. Neither admiralty jurisdiction nor the concurrent right to a maritime lien can arise under these circumstances.
The admiralty jurisdiction of the federal courts only extends to "contracts, claims and services purely maritime and touching rights and duties appertaining to commerce and navigation." People's Ferry Co. of Boston v. Beers, 61 U.S. (20 How.) 393, 401, 15 L.Ed. 961, 964 (1858). It is well-settled doctrine that contracts to construct and outfit a new vessel are merely preliminary to the use of the ship as an instrumentality of commerce and navigation. Thus, such contracts are not maritime in nature and do not fall within the jurisdiction of the admiralty court. Thames Towboat Co. v. The Francis McDonald, 254 U.S. 242, 41 S.Ct. 65, 65 L.Ed. 245 (1920); Nilo Barge Line, Inc. v. M/V Bayou DuLarge, 584 F.2d 841, 842-43 (8th Cir. 1978).
Plaintiff's contract to supply rigging for the new vessel falls within this "original construction" doctrine. In so holding, the following facts are controlling: the contract was entered into while the vessel was under construction; the rigging was necessary to outfit the new vessel for its intended purpose; plaintiff knew that the rigging was to outfit a vessel under construction and that the vessel could not leave the shipyard outfitted for business without the rigging; and delivery and installation of the rigging occurred prior to the vessel's maiden voyage and prior to delivery and acceptance by either the purchaser or charterer. On these facts, it is immaterial that actual installation of the rigging occurred after the vessel was launched for its publicity run to the Arch. See Dubuque Boat & Boiler Co. v. Oil Screw Commander, 251 F.Supp. 923, 927 (W.D.Mo.1966); General Engine & Machine Works, Inc. v. Slay, 222 F.Supp. 745 (S.D.Ala.1963).
For the foregoing reasons, plaintiff's contract upon which it seeks a lien is not maritime in nature. Therefore, this Court lacks admiralty jurisdiction over the action and no maritime lien may arise under 46 U.S.C. § 971.[2]
NOTES
[1] RTC did not enter into a charter agreement with the vessel's purchaser until July 1, 1981. The charter became effective on July 2, 1981, after acceptance of the boat at Wickliffe, Kentucky.
[2] Due to the disposition of this case on jurisdictional grounds, it is unnecessary to address the parties' additional contentions.