**UNITED STATES of America**

v.

**ONE (1) 254 FT. FREIGHTER, the
M/V ANDORIA, etc.**

Civ. A. No. 81–4406.

United States District Court,
E.D. Louisiana,
Section "D".

Aug. 11, 1983.

William F. Baity, Asst. U.S. Atty., New Orleans, La., for plaintiff.

Ralph E. Smith, New Orleans, La., for intervening plaintiff.

Peter S. Herrick, Coconut Grove, Fla., for intervening plaintiff.

## OPINION AND ORDER

McNAMARA, District Judge.

This is a forfeiture proceeding instituted by the United States of America against the M/V ANDORIA, pursuant to 19 U.S.C. 1595(a), 21 U.S.C. 881(a)(4) and 49 U.S.C. 782, for its use in the transporting of illicit drugs into the United States. The M/V ANDORIA, a 254-foot freighter, was seized by the U.S. Customs Service at the Celeste Street Wharf in New Orleans, Louisiana, on or about October 16, 1981. The vessel, which was unable to navigate under its own power, was moved shortly thereafter, at the instance of the Government, to Port Bienville Terminals in Pearlington, Mississippi, where it remained in the custody of the District Director of the U.S. Customs Service. On November 6, 1981, the Government instituted this forfeiture proceeding against the M/V ANDORIA. The vessel was seized by the U.S. Marshal on November 24, 1981, pursuant to a warrant of arrest issued by the Clerk of this Court on November 9, 1981.

Intervenor, Celso Bernardez, later intervened in this action claiming a maritime lien against the M/V ANDORIA for repairs, supplies and other necessaries furnished to the vessel. On joint motion of the Government and the Intervenor, this Court granted an order for the interlocutory sale of the M/V ANDORIA, together with its tackle, apparel and equipment, the proceeds of such sale to be turned over to the Clerk of Court and deposited in an interest bearing account pending the outcome of these proceedings. Pursuant to the Court's Order, the M/V ANDORIA was sold at public

auction by the U.S. Marshal on March 24, 1982, for the sum of $54,000.00, and the proceeds of that sale substituted as the *res* in these proceedings. The Marshal's Bill of Costs, listing the Marshal's fees, expenses and sale commission was subsequently approved by the Court.

The Government then filed a Motion for Distribution of Proceeds in the Registry of the Court, wherein the Government claims the following expenses related to the seizure of the M/V ANDORIA: storage charges—$2,509.00; cost of moving the M/V ANDORIA to Port Bienville Terminals—$30,691.80; survey and appraisal fees —$1,123.44; and, Marshal's expenses— $929.16. Similarly, the Intervenor, Celso Bernardez, filed a Motion for Summary Judgment seeking first payment (after payment of the Marshal's costs and expenses [1]) from the proceeds of the sale on its maritime lien for "necessaries" furnished to the vessel in the amount of $103,577.33. The Court heard oral argument on the Motions and took the matter under advisement. After considering the memoranda submitted, the argument of counsel and the applicable law, the Court now rules as follows.

 Generally, competing maritime lien claims are first ranked according to class. The classes are, from highest priority to lowest, the following:

1. Expenses of justice during *custodia legis*—expenses arising from the care and operation of the ship while it is in the custody of the Court through the U.S. Marshal (not regarded as a lien, but given priority).
2. Seamen's liens (including those of the Master) for wages, maintenance and cure; and wages of longshoremen directly employed by the vessel.
3. Salvage and general average liens.
4. Tort liens, including personal injuries.
5. Preferred ship mortgage liens (U.S. flag vessels).

6. Liens for necessaries under the Maritime Lien Act of 1920.
7. State—created liens of maritime nature.
8. Maritime liens for penalties and forfeiture for violation of Federal Statutes.
9. Perfected non-maritime liens, including tax liens.
10. Attachment liens in causes of action within the admiralty and maritime jurisdiction (foreign attachment).
11. Maritime liens in bankruptcy.

Once competing liens have been ranked according to class, the top priority liens will of course be paid first. If the funds are insufficient to pay the next lower ranked class in full, the available funds will be distributed among claimants in that class according to rules operating within that class. The rules may of course vary from class to class. *Rayon Y. Celanese Peruana v. M/V PHGH,* 471 F.Supp. 1363 (S.D.Ala.1979), citing G. Varian, *Rank and Priority of Maritime Liens,* 47 Tulane L.Rev. 751 (1973); G. Gilmore and C. Black, *The Law of Admiralty,* 596 (2nd Ed.1975).

 It is well settled that otherwise valid maritime liens are not terminated or displaced by forfeiture to the United States. The rights of seamen, materialmen, cargo owners, mortgagees and any other claimants are protected, whether their lien arose before or after the unlawful act was committed, so long as they had no knowledge of the Master's or Owner's intention to engage in an illegal venture and did not in any way join in the execution of the violation. *Benedict on Admiralty,* Section 65 (7th Ed. 1982), citing the *St. Jago de Cuba,* 22 U.S. (9 Wheat.) 409, 6 L.Ed. 122 (1824). In this case the United States does not contend intervenor had any knowledge or complicity in the illegal venture.

 Thus, it is clear that maritime liens for necessaries furnished the vessel, such as that claimed by the Intervenor in the

---

1. The Intervenor does not contest the U.S. Marshal's entitlement to first payment from the proceeds of sale for its costs and expenses

while the M/V ANDORIA was *in custodia legis.*

present case, prime penalties and forfeiture claims by the Government for violation of U.S. Statutes. The question, in the instant case, then becomes, whether the expenses claimed by the Government are "expenses of justice reasonably incurred during *custodia legis*" which should be paid in priority to *all* lien claims.

It is well established that only those services or property furnished *upon the authority of the Court* for the common benefit of those interested in a fund *administered by the Court* should be paid from the fund as an "expense of justice". *New York Dock Co. v. The Poznan*, 274 U.S. 117, 47 S.Ct. 482, 71 L.Ed. 955 (1927); *General Electric and Leasing Corp. v. Drill Ship Mission Exploration*, 668 F.2d 811 (5th Cir. 1982). As is explained in *Benedict on Admiralty*, Section 46:

"When a vessel is in the custody of the law, having been seized by the Marshal, and being either in his actual or constructive possession, no new liens against her may accrue, and neither the Marshal, the Master, nor the owner has the power to impose a lien of any sort beyond such as are necessary for the ship's due care and preservation. Since the seizure revokes all authority to incur liabilities on behalf of the ship, one who renders services without first acquiring the Court's permission, does so at his own risk. The right of such a party to a lien depends on whether the Court determines the services to fall within the exception to the general rule. The Court has the self-imposed duty in the exercise of its accustomed jurisdiction, to require that expenses which have contributed either to the preservation or creation of the fund in its custody be satisfied before a general distribution among those entitled to receive it. The result is not a maritime lien but a lien arising by virtue of the equity and good conscience denial of unjust enrichment."

It is apparent from the underscored language that "custodial" expenses within the meaning of this equitable doctrine are those incurred "when a vessel is in the custody of the law, having been seized by the Marshal". Thus, only those expenses for services or property furnished the M/V ANDORIA *after* its seizure by the U.S. Marshal on November 24, 1981, can be considered to have been incurred while the vessel was *in custodia legis.* Conversely, any expenses for services or property provided *before* that date were not incurred during *custodia legis.*

The Government argues that 21 U.S.C. 881(e), as amended, requires first payment to the Government for expenses incident to seizure and maintenance of custody regardless of whether or not there exists a valid maritime lien. The Court does not agree. That statute sets forth the substantive law of forfeiture and contemplates the payment of those expenses incurred incident to the forfeiture proceeding itself, prior to forwarding the balance to the U.S. Treasurer. Such expenses are considered part of the Government's forfeiture claim, as opposed to expenses of justice incurred while the vessel is *in custodia legis* and, therefore, ranked below other maritime liens.

Accordingly, this Court finds that the Intervenor's maritime lien against the M/V ANDORIA for repairs, services and other necessaries primes the Government's claim for expenses for services or property furnished the M/V ANDORIA *prior to* its seizure on November 24, 1981. However, the Court finds that expenses incurred by the Government for property or services furnished *after* that date (i.e., while the vessel was *in custodia legis*), including the Marshal's costs and expenses, should be paid first out of the sale proceeds as an "expense of justice" before payment to the Intervenor.

The parties shall attempt to arrive at a stipulation regarding those expenses for which the Government is entitled to first payment, in accordance with this Opinion. If unable to agree, the parties are to notify the Court within two weeks from the date this Order is entered, at which time the Court will set a hearing to decide that issue.