**UNITED STATES of America, Plaintiff-Appellant,**

v.

**ONE (1) 254 FT. FREIGHTER, the M/V ANDORIA, etc., Defendant-Appellee,**

**and**

**Celso Bernardez, Intervenor-Appellee.**

**No. 83–3752.**

United States Court of Appeals, Fifth Circuit.

July 22, 1985.

---

John Volz, U.S. Atty., William F. Baity, Harry P. Pastuszek, Jr., Asst. U.S. Attys., New Orleans, La., for plaintiff-appellant.

Peter S. Herrick, Harry W. Birt, Jr., Miami, Fla., Ralph E. Smith, New Orleans, La., for defendant-appellee.

Before THORNBERRY, GARWOOD and HILL, Circuit Judges.

GARWOOD, Circuit Judge:

This case concerns whether, when a vessel used to transport, possess or conceal narcotics is judicially sold pursuant to forfeiture proceedings brought by the United States, an "innocent" maritime lien for necessaries entitled to the protection of 46 U.S.C. § 961(b) has priority, in respect to the sales proceeds, over the government's seizure and other vessel-related expenses incurred prior to the vessel's judicial arrest in the forfeiture proceedings. The district court in a well-reasoned opinion held that the maritime lien had priority. 570 F.Supp. 413 (E.D.La.1983). The United States appeals this decision. As the only matter in issue is controlled by our decision in *General Electric Credit Corporation v. Oil Screw Triton, VI*, 712 F.2d 991, 995 (5th Cir.1983), which likewise held that the maritime lien had priority, we affirm.

The vessel in question, the M/V Andoria, was seized by United States Customs Patrol officers while lying in navigable waters at a New Orleans public wharf on October 16, 1981, on the basis of information that she was bringing cocaine into the United States. Large quantities of cocaine and marihuana were found on board in compartments created by false bulkheads. It being discovered that the vessel's engines were not working, Customs had her towed by private parties to a storage facility at Pearlington, Mississippi where she remained in the custody of the District Director of the United States Customs Service. On November 6, 1981, some time

after the vessel was moved to Pearlington, the government instituted the present proceedings by filing its complaint in forfeiture against the vessel in the court below. Jurisdiction was predicated on 28 U.S.C. §§ 1345 and 1355. It was alleged that the vessel was seized by the Customs Service at the New Orleans wharf on October 16, 1981 and was in the custody of the District Director of the United States Customs Service, that marihuana and cocaine were found aboard, that the vessel was used in the illegal importation, concealment and/or harboring of the marihuana and cocaine, and that by reason thereof the vessel was forfeited to the United States pursuant to 49 U.S.C. §§ 781 and 782, 19 U.S.C. § 1595a and 21 U.S.C. § 881(a)(4). The relief sought was that, after notice to interested parties, a decree be entered condemning the vessel as forfeited to the United States. On November 9, 1981 a warrant for arrest of the vessel was issued by the district clerk in the forfeiture suit, and pursuant thereto the United States Marshal served the warrant and arrested the vessel on November 24, 1981. Pursuant to the terms of the arrest warrant the vessel was left at the Pearlington storage facility.

In January 1982 appellee Bernardez filed a petition to intervene in the forfeiture proceedings, alleging a maritime lien against the vessel under 46 U.S.C. § 971 in the amount of $103,000 for necessaries furnished the vessel prior to October 1981. The district court granted leave to intervene. Thereafter, on January 8, 1982, the United States and appellee jointly moved that there be an interlocutory sale of the vessel pursuant to Supplemental Admiralty Rule E(9)(b), with the sales proceeds to be paid to the district clerk and deposited in an interest-bearing account pending final

disposition of the cause. This motion was granted on January 11, 1982 and pursuant thereto the vessel, still at the Pearlington facility, was sold by the marshal on March 24, 1982 for $54,000, which was deposited in the registry of the court.

No other parties sought to appear in the action, and the forfeiture of the vessel was confirmed by order of the district court dated January 19, 1983. Thereafter, proceedings were had to determine entitlement to the proceeds of sale as between the United States and Bernardez. The district court determined that Bernardez had a valid $103,000 maritime lien for necessaries against the vessel.[1] The court also determined that Bernardez had no "knowledge or complicity in the illegal venture" involving the vessel, and that hence his maritime lien was not terminated or displaced by the forfeiture.[2] The United States does not challenge either of these determinations on appeal.

The United States, however, sought below to recover out of the sales proceeds, before any recovery by intervenor on his lien, all its various expenses incurred in relation to the vessel on or after the October 16, 1981 seizure, amounting to approximately $35,000, including the expenses of sale. The largest item so claimed was some $30,700 for the cost of moving the vessel from New Orleans to Pearlington, which was incurred prior to the institution of the forfeiture suit. The district court gave first priority, in the distribution of the $54,000 sales proceeds, to the cost of the sale and the storage and other costs incurred respecting the vessel since its judicial seizure and arrest on November 24, 1981, these items amounting in all to $3,147.35. Neither the United States nor

---

1. *See* 46 U.S.C. § 971, which provides:
   "Any person furnishing repairs, supplies, towage, use of dry dock or marine railway, or other necessaries, to any vessel, whether foreign or domestic, upon the order of the owner of such vessel, or of a person authorized by the owner, shall have a maritime lien on the vessel, which may be enforced by suit in rem, and it shall not be necessary to allege or prove that credit was given to the vessel."

2. *See* 46 U.S.C. § 961(b), which provides:
   "(b) The interest of the mortgagee in a vessel of the United States covered by a mortgage, shall not be terminated by the forfeiture of the vessel for a violation of any law of the United States, unless the mortgagee authorized, consented, or conspired to effect the illegal act, failure, or omission which constituted such violation."

Bernardez quarrels with this computation or with the priority afforded these items. As to the remaining $50,852.65, the district court ruled that Bernardez's maritime lien primed the United States' claim for expenses prior to the judicial arrest on November 24, 1981. Since the amount of Bernardez's maritime lien exceeded the $50,852.65 remaining sales proceeds, the full $50,852.65 was awarded to Bernardez.

The United States was thus unable to recover its some $30,700 in vessel moving expenses incurred after the seizure in New Orleans and before institution of the forfeiture suit, as well as some $1,400 in vessel storage and related expenses incurred prior to November 24, 1981. It is only the district court's ruling giving the intervenor's maritime lien priority over these some $32,100 of vessel expenses, incurred after its seizure by the Customs officials but prior

to the judicial seizure and arrest in the forfeiture suit, which the United States challenges on this appeal.

The United States bases its claim to the expense in question on the provisions of 21 U.S.C. § 881(e) [3] and 19 U.S.C. § 1613(a). [4] While these enactments clearly authorize payment of such expenses, that is not the issue here. The issue is, rather, whether or to what extent such expenses prime a preexisting maritime lien which Congress has decreed shall not be terminated by forfeiture. *See* note 2, *supra.*

In a scholarly brief, the government takes the position that the question of priority *should not be determined by maritime law.* It points to *C.J. Hendry Co. v. Moore,* 318 U.S. 133, 63 S.Ct. 499, 87 L.Ed. 663 (1943), as indicating the common law, rather than maritime, nature of sovereign

---

**3.** 21 U.S.C. § 881(e) provides:

"(e) Whenever property is forfeited under this subchapter the *Attorney General may* —
"(1) retain the property for official use;
"(2) *sell any forfeited property* which *is not* required to be destroyed by law and which is not harmful to the public;
"(3) require that the General Services Administration take custody of the property and remove it for disposition in accordance with law; or
"(4) forward it to the Drug Enforcement Administration for disposition (including delivery for medical or scientific use to any Federal or State agency under regulations of the Attorney General).
"*The proceeds from any sale under paragraph (2)* and any moneys forfeited under this subchapter *shall be used to pay all proper expenses of the proceedings for forfeiture and sale including expenses of seizure, maintenance of custody, advertising, and court costs.* The Attorney General shall forward to the Treasurer of the United States for deposit in the *general fund of the United States Treasury* any amounts of such moneys and *proceeds remaining after payment of such expenses."* (Emphasis added.)

**4.** 19 U.S.C. § 1613(a) provides:

"(a) Except as provided in subsection (b) of this section, *any person claiming any vessel,* vehicle, merchandise, or baggage, or any interest therein, *which has been forfeited and sold* under the provisions of this chapter, *may* at any time within three months after the date of sale *apply to the Secretary of the Treasury* if the forfeiture and sale was under the customs

laws, or if the forfeiture and sale was under the navigation laws, *for a remission of the forfeiture* and restoration of the proceeds of such sale, or such part thereof as may be claimed by him. *Upon the production of satisfactory proof that the applicant did not know of the seizure prior to the declaration or condemnation of forfeiture,* and was in such circumstances as prevented him from knowing of the same, *and that such forfeiture was incurred without any willful negligence or intention to defraud on the part of the applicant, the Secretary* of the Treasury *may order the proceeds of the sale,* or any part thereof, *restored* to the applicant, *after deducting the cost of seizure and of sale,* the duties, if any, accruing on the merchandise or baggage, and any sum due on a lien for freight, charges, or contribution in general average that may have been filed. *If no application for such remission* or restoration *is made* within three months after such sale, *or if the application be denied* by the Secretary of the Treasury, *the proceeds of sale shall be disposed of as follows:*
"(1) For the payment of all proper *expenses* of the proceedings of forfeiture and sale, *including expenses of seizure, maintaining the custody of the property,* advertising and sale, *and if condemned by a decree* of a district court and a bond for such costs was not given, *the costs as taxed by the court;*
"(2) For the satisfaction of *liens for freight, charges,* and contributions in general average, notice of which has been filed with the appropriate customs officer according to law; and
"(3) *The residue shall be deposited with the Treasurer of the United States* as a customs or navigation fine." (Emphasis added.)

forfeitures. It urges that jurisdiction in forfeiture cases is founded on 28 U.S.C. § 1355, not on 28 U.S.C. § 1333, and that the 1948 amendments to section 1355, which added "pecuniary or otherwise" to section 1355 just following "forfeiture," made clear that section 1355 extends to property forfeitures. It also points to the fact that the provision of 28 U.S.C. § 2461(b), enacted in 1948, for enforcement of forfeiture of a vessel seized on navigable waters "by libel in admiralty" is inapplicable if it is "otherwise provided by Act of Congress." And in this connection it cites the above forfeiture statutes and the provision of Rule A of the Supplemental Admiralty Rules referring to the application of those rules to certain proceedings "analogous to maritime actions in rem whether within the admiralty and maritime jurisdiction or not." It argues "that Forfeiture of Property Actions are only analogous to maritime in rem actions because they employ the same procedure, not because they are both maritime actions." Hence, it says, only maritime procedure, not substantive maritime law, applies. It also points out that 46 U.S.C. § 741 prevents libels in rem against vessels "in the possession of the United States." Alternatively, the government contends that all the expenses it seeks recovery for are "in custodia legis" expenses, entitled to first priority under admiralty law, because the jurisdiction of the court in a forfeiture case is fixed by the government's seizure, not the seizure by court process as in the conventional in rem admiralty proceeding, citing *The Brig Ann*, 9 Cranch 289, 3 L.Ed. 734 (1815).

Although these arguments are not without some force, we note that we are dealing with a vessel seized on navigable waters and with a statute, 46 U.S.C. § 961(b), which protects "the interest of the mortgagee in a vessel" against termination by federal government forfeiture, where the mortgagee is innocent. It hardly seems inappropriate to apply principles of admiralty law to determine the extent of the interest of the innocent mortgagee of the vessel which is protected by that statute. The forfeiture statutes relied on by the government do not expressly speak to this. Nor are we convinced that *Moore* mandates a different approach. There the Supreme Court stated:

"This Court in suits brought in admiralty sustained the admiralty jurisdiction over forfeitures prescribed by Congress for the violation of federal revenue and other laws where the seizure had occurred on navigable waters. [Citations omitted.] Those decisions held that *when seizure occurred on navigable waters the cause was maritime* and hence triable without a jury in the federal courts. But they obviously did not determine, and there was no occasion to determine, whether forfeiture proceedings belonged in the *category of maritime causes that might also be tried in state courts* because, within the meaning of the saving clause, the common law was competent to give the remedy.

"The Court has never held or said that the admiralty jurisdiction in a forfeiture case is exclusive, and it has repeatedly declared that, *in cases of forfeiture of articles seized on land* for violation of federal statutes, the *district courts proceed as courts of common law* according to the course of the Exchequer on informations in rem with trial by jury." 63 S.Ct. at 509–10 (emphasis added; footnote omitted).

This language does not suggest the inapplicability to the question at hand of maritime law principles for the ranking of liens and like charges. Nor does any other case cited to us by the government.

As for the government's reliance on 46 U.S.C. § 741, the present action is not a libel in rem filed by a third party. *Cf.* 28 U.S.C. § 2461(b) (where vessel seized on navigable waters forfeiture may be enforced "by libel in admiralty"). We also note that 46 U.S.C. § 743 provides that the libel in personam contemplated by sections 741 and 742 "may proceed in accordance with the principles of libels in rem wherever it shall appear that had the vessel or cargo been privately owned and possessed a libel in rem might have been maintained."

Finally, *The Brig Ann* certainly does not purport to speak directly to what expenses are "in custodia legis," but rather was concerned simply with which of two district courts had jurisdiction.

At all events, however, this case is clearly governed by our decision in *Triton*. The government does not assert that *Triton* is distinguishable, and indeed concedes that it is necessarily inconsistent with all the government's theories of priority.[5] Rather, the government urges that *Triton* was incorrectly decided. We are by no means convinced of this. But even if we were, we are bound by *Triton*, as one panel of this Court may not overrule another, absent an intervening decision of the Supreme Court or other change in the relevant law. The district court's judgment is fully supported by *Triton* and is correct. It is therefore affirmed.

AFFIRMED.

---

5. *Triton* was handed down some eleven days after the district court's opinion here. A little over a month later, motion for rehearing in *Triton* was overruled.