787 F.2d 958
 57 A.F.T.R.2d 86-1246, 86-1 USTC P 9367
 UNITED STATES of America and Michael O. Hanson, Special
Agent of the Internal Revenue Service, Petitioners-Appellees,
v.
Bernard M. BARRETT, Jr. as President of Plastic and
Reconstructive Surgeons, P.A., Houston, Texas,
Respondent-Appellant.
 No. 85-2054.
 United States Court of Appeals,
Fifth Circuit.
 April 16, 1986.
 
 Edward D. Urquhart, Urquhart & Hassell, Charles J. Escher, Houston, Tex., for respondent-appellant.
 William A. Whitledge, Atty., Henry K. Oncken, U.S. Atty., James R. Gough, Asst. U.S. Atty., Houston, Tex., Glenn L. Archer, Jr., Asst. Atty. Gen., Tax Division, Michael L. Paup, Chief, U.S. Dept. of Justice, Washington, D.C., Charles E. Brookhart, Atty., for petitioners-appellees.
 Appeal from the United States District Court for the Southern District of Texas.
 Before BROWN, REAVLEY and HILL, Circuit Judges.
 ROBERT MADDEN HILL, Circuit Judge:
 
 
 1
 Dr. Bernard M. Barrett, Jr., appeals from a district court order enforcing an Internal Revenue Service (IRS) summons directing him to produce all the financial records of his incorporated medical practice. We affirm.
 
 I.
 
 2
 Barrett is the president of an incorporated medical practice specializing in plastic and reconstructive surgery. In 1979 the IRS began an audit of Barrett's personal and corporate income tax returns for the years 1976, 1977 and 1978. When the initial investigation uncovered a $100,000 discrepancy between Barrett's books and his bank records, the IRS transferred the case from its civil to its criminal division.
 
 
 3
 Agent Michael O. Hanson, to whom the case was transferred, determined that it would be necessary to inquire of Barrett's patients the amount each had payed for Barrett's services. To this end, Agent Hanson sent two sets of summonses calling for patient's records, one to the hospitals where Barrett practiced and one to Barrett himself. All but four of the hospitals complied with the summonses providing a total of 350 patients' names. Agent Hanson then sent a letter to each patient advising that Barrett was being investigated by the Criminal Investigation Division of the IRS and requesting documentation of fees paid to Barrett. The IRS's right to enforce the summonses issued to the four noncomplying hospitals was litigated in this court in United States v. Texas Heart Institute, 755 F.2d 469 (5th Cir.1985). The instant appeal involves the validity of the district court's decision to enforce the IRS summons issued to Barrett.
 
 
 4
 Barrett maintains that the summons was not issued to him for a legitimate purpose. Alternatively Barrett urges this court to follow the example of Texas Heart and to remand for further proceedings to determine whether the district court's enforcement order should be modified so as to prohibit the IRS from informing his patients that he is under criminal investigation.
 
 II.
 
 5
 Barrett has fully complied with the district court's order requiring him to release the names of his patients. His claim that the district court based its decision to enforce the summons upon an erroneous finding that the IRS possessed a legitimate investigatory purpose[1] is therefore moot. Grathwohl v. United States, 401 F.2d 166 (5th Cir.1968); Lawhon v. United States, 390 F.2d 663 (5th Cir.1968).
 
 
 6
 Barrett's claim that he is entitled to remand under Texas Heart is less easily disposed of. At the time of this appeal, the IRS has not yet conducted mailings to Barrett's office patients. If Barrett was entitled, in the first instance, to obtain an order from the district court prohibiting certain uses of the summoned information, we see no reason why he should not be entitled to have those restrictions imposed upon remand. The question we must answer, then, is whether in an enforcement proceeding the district court could have appropriately restricted the IRS in the manner that it conducted mailings to Barrett's customers.
 
 
 7
 Our analysis begins with the provisions of the Internal Revenue Code (Code), 26 U.S.C., which create in Barrett a right to privacy. Section 6103(a) sets forth the general rule that tax return information is confidential and may not be disclosed by officers and employees of the United States.[2] One exception to the general rule of confidentiality is described in section 6103(k)(6) which provides:
 
 
 8
 An internal revenue officer or employee may, in connection with his official duties relating to any audit, collection activity, or civil or criminal tax investigation or any other offense under the internal revenue laws, disclose return information to the extent that such disclosure is necessary in obtaining information, which is not otherwise reasonably available....
 
 
 9
 The Code provides both criminal penalties against individuals who violate the non-disclosure provisions of section 6103 and a civil right of action for damages against the United States for those whose return information is impermissibly disclosed. Section 7213 makes it unlawful to disclose any return or return information except as authorized by the Code, and punishes a willful violation of that section by five years' imprisonment or a $5,000 fine, or both. Section 7431 provides to the individual whose return information is unlawfully disclosed a right of action for damages against the United States and sets the minimum amount of the damages at $1,000 for each unauthorized disclosure.[3]
 
 
 10
 Our task is to determine how section 6103 meshes with section 7602 which authorizes the IRS to "examine any books, papers, records, or other data which may be relevant ... [and to summon] any person having possession of books of account ... relevant or material to such inquiry." We begin by noting that in construing the breadth of the summons authority Congress intended to grant the IRS, the Supreme Court has consistently declined to circumscribe purposeful and productive exercises of such authority "absent unambiguous directions from Congress." U.S. v. Arthur Young & Co., 465 U.S. 805, 816, 104 S.Ct. 1495, 1502, 79 L.Ed.2d 826 (1984) (quoting United States v. Bisceglia, 420 U.S. 141, 150, 95 S.Ct. 915, 921, 43 L.Ed.2d 88 (1975)); United States v. Euge, 444 U.S. 707, 715, 100 S.Ct. 874, 880, 63 L.Ed.2d 141 (1980). In United States v. Powell, 379 U.S. 48, 85 S.Ct. 248, 13 L.Ed.2d 112 (1964), for example, the Supreme Court refused to read into section 7605(b), prohibiting "unnecessary examination[s]," a requirement that enforcements of summonses be founded on probable cause. The Court reasoned that "[a]lthough a more stringent interpretation is possible ... we reject such an interpretation because it might seriously hamper the Commissioner in carrying out investigations he thinks warranted...." 379 U.S. at 53-54, 85 S.Ct. at 253, quoted in United States v. Euge, 444 U.S. at 715, 100 S.Ct. at 880. Similarly in Donaldson v. United States, 400 U.S. 517, 91 S.Ct. 534, 27 L.Ed.2d 580 (1971), the Court declined to limit the summons authority to cases where no criminal prosecution was contemplated. "Any other holding," said the Court, "would thwart and defeat the appropriate investigatory powers that the Congress has placed in 'the Secretary or his delegate.' " 400 U.S. at 533, 91 S.Ct. at 544. Again, in United States v. Bisceglia the Court, finding no discernible contrary purpose by Congress, upheld the IRS's authority under section 7602 to issue a "John Doe" summons to a bank to determine the identity of unknown individuals who might be liable for unpaid taxes. The Court again broadly construed the IRS's summonsing authority in United States v. Euge to permit it to compel the execution of handwriting samples. A contrary result, reasoned the Court, would "stultify enforcement of federal law." 444 U.S. at 715, 100 S.Ct. at 880 (quoting Donaldson v. United States, 400 U.S. at 536, 91 S.Ct. at 545). Finally, in United States v. Arthur Young & Co., the Court declined to accord a privilege to an auditor's tax accrual workpapers. "We are unable," wrote the Court, "to discern the sort of 'unambiguous directions from Congress' that would justify a judicially created work-product immunity for tax accrual workpapers summoned under Sec. 7602." 465 U.S. at 816, 104 S.Ct. at 1502.
 
 
 11
 The power to solicit information from third parties having financial dealings with a particular taxpayer is a vital part of the IRS's information-gathering authority. In connection therewith Congress has also seen fit to enact civil remedies and criminal penalties against unnecessary disclosures of confidential information. We have no indication, however, that Congress intended sections 6103 and 7431 to burden purportedly "summary" enforcement proceedings with the time-consuming litigation that section 6103(k)(6) determinations would entail.[4] We concur in the suggestion of Texas Heart[5] that a district court may inquire at an enforcement proceeding about the IRS's plans to conform to section 6103, and it seems to us that the IRS could pursue its investigation in the present case without informing all of Dr. Barrett's patients that he is under criminal investigation. The taxpayer's remedy, however, for unlawful violation of section 6103(a) are the civil provisions set forth in section 7431. The district court's authority to find an abuse of process is limited to those instances specifically envisioned by the Supreme Court, namely, when "the summons has been issued for an improper purpose, such as to harass the taxpayer or to put pressure on him to settle a collateral dispute, or for any other purpose reflecting on the good faith of the particular investigation." United States v. Powell, 379 U.S. at 58, 85 S.Ct. at 255.
 
 
 12
 We AFFIRM the order of the district court enforcing the IRS summons issued to appellant Barrett.
 
 
 13
 JOHN R. BROWN, Circuit Judge, concurring in part and dissenting in part.
 
 
 14
 I concur in the Court's holding that the District Court correctly ordered enforcement of the IRS summons. I dissent from the opinion of the majority in its failure to require the District Court to consider whether the IRS letters to Dr. Barrett's patients could permissibly refer to the fact that the physician was under "criminal investigation."
 
 In a Nutshell
 
 15
 In my view, the decision of the majority is deficient in two respects. First, the panel purports to displace the holding of Texas Heart with "a new rule [that] henceforth a taxpayer's sole remedy for unlawful violations of Sec. 6103(a) shall be the civil provisions set forth in Sec. 7431." Second, and more importantly, the majority reaches an unsound result. I cannot believe that a District Court is required to stand idly by while its processes are unnecessarily used to inflict damage upon a taxpayer's reputation.
 
 
 16
 Conditional enforcement of an IRS summons provides an easy and efficacious means of avoiding that result, and because the majority fails to apply and enforce the holding and the mandate of Texas Heart in that regard, I must dissent.
 
 The Mandate in Texas Heart
 
 17
 In 1979, the IRS commenced an investigation of the personal and corporate tax returns of Dr. Barrett. That investigation culminated in the issuance of two summonses: one to Dr. Barrett, and one to each of the hospitals at which he practiced medicine. Each summons demanded the production of patient records in order to identify the patients of Dr. Barrett so that the IRS could compare payments made by patients and insurers with income actually reported by the physician. By obtaining patient names through the mechanism of the summons, the IRS could use that information to contact each patient directly, by mail, in order to obtain information pertinent to their transactions with Dr. Barrett. Over 350 of Dr. Barrett's patients--identified through the hospitals' response to the summons--eventually received a letter from the IRS, written on the letterhead of the agency's Criminal Investigation Division, which began with the following sentence "the above named individual [Dr. Barrett] is currently under investigation by the Criminal Investigation Division of the Internal Revenue Service."
 
 
 18
 Four hospitals did not comply with the summons. On June 21, 1983, the IRS filed a petition for enforcement of its summons against them. Dr. Barrett intervened in that proceeding. On December 6, 1983, enforcement of the summons was denied by Judge Black. On December 12, 1983, six days after Judge Black denied enforcement against the hospitals, the IRS filed a separate petition for enforcement of its summons against Dr. Barrett. That proceeding was docketed in Judge DeAnda's court and, on December 10, 1984, Judge DeAnda enforced the summons against Dr. Barrett.
 
 
 19
 The IRS appealed Judge Black's denial of enforcement against the hospitals. The validity of that summons, without which the mass mailing could not have proceeded, was litigated in that appeal and gave rise to the mandate in Texas Heart. In Texas Heart, the Court recognized that the disclosure in the patient letter of the fact that Dr. Barrett was under criminal investigation might be an unauthorized disclosure of return information as defined in Sec. 6103. It held, however, that "even if the IRS unlawfully disclosed ... that Dr. Barrett was under criminal investigation, that disclosure does not demonstrate [a] lack of a legitimate investigative purpose for the investigation in this case." 755 F.2d at 480.
 
 
 20
 It remained to be seen, however, whether the enforcement of the summons could nonetheless be tailored to protect Dr. Barrett against the disclosure of the fact that he was under criminal investigation. That disclosure, if permitted to occur, would very likely be injurious to the physician's professional, as well as to his personal, reputation. Because it recognized that such a disclosure could have grave and lasting consequences, the Court in Texas Heart remanded the case to the district judge for three critical determinations:
 
 
 21
 (i) whether the statement in the prior patient mailings that Dr. Barrett was under criminal investigation was a disclosure of "return information" under Sec. 6103; and, if so,
 
 
 22
 (ii) whether the disclosure of that information was authorized under Sec. 6103(k)(6) which permits the disclosure of return information to the extent such disclosure is necessary to obtain information not otherwise reasonably available; and, if the disclosure was not authorized,
 
 
 23
 (iii) whether the enforcement of the summons should be conditioned by requiring the IRS to desist from further unlawful disclosures.
 
 
 24
 755 F.2d at 482.
 
 
 25
 The present appeal arises from the separate summary proceeding instituted to enforce the summons issued to Dr. Barrett. In that proceeding, Dr. Barrett had objected that the intended use of the summons information--blind mailings to patients disclosing the fact that he was under criminal investigation--was a violation of his privacy rights. Judge DeAnda, however, unconditionally enforced the summons and Dr. Barrett then appealed.
 
 
 26
 Dr. Barrett contends on appeal that this case should be remanded to the District Court in light of the holding in Texas Heart. In Texas Heart, the Court expressly stated that "it may well be an abuse of process to allow enforcement of summonses when the IRS concedes it will continue to unlawfully disclose taxpayer return information." 755 F.2d at 482. To guard against such potential abuses, the Court made the following unequivocal statement:
 
 
 27
 The Court reiterates that even if the past disclosure was unlawful, the district court has discretion to condition enforcement of the summonses by requiring that the IRS agree to desist from further unlawful disclosures.
 
 
 28
 Id. Dr. Barrett contends that, in light of this holding, the District Court should be required to consider whether the enforcement of the summons should be conditioned in order to protect him against the unnecessary disclosure of the fact that he is under criminal investigation.
 
 Rejecting Re-Examination of Texas Heart
 
 29
 In my view, the remand sought by Dr. Barrett is essential. I dissent from the opinion of the majority because, in failing to so hold, it reexamines Texas Heart and implicitly overrules an essential part of the holding of the case. That is something which we, as a three-judge panel of this Circuit, are not empowered to do. United States v. One 254 Foot Freighter, the M/V ANDORIA, 768 F.2d 597, 602 (5th Cir.1985); Fritiofson v. Alexander, 772 F.2d 1225, 1237 n. 6 (5th Cir.1985); United States v. 162.20 Acres of Land, 733 F.2d 377, 379 (5th Cir.1984); United States v. Albert, 675 F.2d 712, 713 (5th Cir.1982).
 
 
 30
 In its own words, the majority states "the question we must answer, then, is whether in an enforcement proceeding the District Court could have appropriately restricted the IRS in the manner that it conducted mailings to Dr. Barrett's customers." That question is no longer open. It was answered by the Court in Texas Heart. The answer was emphatic:
 
 
 31
 the district court has discretion to condition enforcement of the summonses by requiring that the IRS agree to desist from further unlawful disclosures.
 
 
 32
 755 F.2d at 482. That decision is binding on us and will remain so until overturned either by the Supreme Court or by this Court sitting en banc. To purport to replace that holding with "a new rule" that denies the existence of such discretion is simply not a decision which is within the province of this panel.
 
 The New Rule
 
 33
 The majority states that "henceforth a taxpayer's sole remedy for unlawful violations of Sec. 6103(a) shall be the civil provisions set forth in Sec. 7431." It justifies this decision by stating that it has "no indication ... that Congress intended Secs. 6103 and 7431 to burden purportedly 'summary' enforcement proceedings with the time-consuming litigation that Sec. 6103(k)(6) determinations would entail." One wonders, however, where the burden really lies and just how heavy or time-consuming it truly is.
 
 
 34
 Unless acquiesced in, the IRS is already required to seek enforcement of its summonses in the District Court, where it must prove that it possesses a legitimate investigative purpose for the summons. United States v. Powell, 379 U.S. 48, 57-58, 85 S.Ct. 248, 13 L.Ed.2d 112 (1964). Given that a hearing is already required to determine whether such a legitimate investigative purpose exists, it does not appear unreasonable to permit, or to require, a District Court to inquire at that proceeding into whether the breadth of the IRS summons, or the practices flowing from its use, can be tailored so as not to collide with the Congressional intent to protect the taxpayer against unnecessary invasions of his privacy. Much of the evidence pertinent to the existence of a legitimate investigative purpose for the summons will also be relevant to the determination of whether the disclosure of return information is necessary to obtain information that is otherwise not reasonably available. See 26 U.S.C. Sec. 6103(k)(6). The determination of whether there exists a legitimate investigative purpose for the summons is certainly not far removed from the determination of whether the practices flowing from its enforcement are an unnecessary invasion of privacy or threaten injury to a taxpayer's reputation.
 
 
 35
 The result of the majority's opinion, however, is that the District Court is required to stand idly by and enforce a summons which unnecessarily subjects a taxpayer to the ridicule and humiliation of being labeled as a criminal tax evader in the eyes of his fellows. This case presents a perfect illustration of the harm which will be wrought by adhering to such a result. Despite the instruction in the IRS Manual that "caution must be exercised not [to] damage the reputation of the taxpayer by making [a mass mailing] either offensive or suggestive of any wrongdoing by the taxpayer," 5 CCH Internal Revenue Manual, p 9781 ch. 347 at 26,891, Agent Hanson's letter to Dr. Barrett's patients began with the startling disclosure that the physician was "currently under investigation by the Criminal Investigation Division of the Internal Revenue Service." That language cannot, by any stretch of the imagination, be termed cautious. Indeed, the IRS Manual instructs its agents that "appropriate wording [for a mass mailing] could be 'the Internal Revenue Service is conducting an investigation of [taxpayer's name].' " Id. (Emphasis added).
 
 
 36
 The Government, in response to a specific request by the Court at oral argument for any authoritative statement on behalf of the Department of Justice, justifies the letter on the grounds that if, in a follow-up to the letter, an agent were to interview one of Dr. Barrett's patients who has been identified as a result of the summons, the agent would be required to identify himself as a special agent affiliated with the Criminal Investigation Division. I recognize that many factors--some approaching considerations of due process--support this requirement. But we deal here not with a true field investigation. Instead, we have only the broadside, initial inquiry to hundreds of unsuspecting persons who may well harbor a godfather image of their doctor.
 
 
 37
 An entire reputation was jeopardized by the injudicious, inappropriate, and wholly unnecessary use of language by Special Agent Hanson, and by the IRS' disclosure of the fact that Dr. Barrett was under criminal investigation. Among the sophisticated clientele of a plastic surgeon, the reference to a "criminal investigation" is far from an innocuous indication that Dr. Barrett's tax returns--like those of innumerable, honest business and professional people--reflected signs of neglect or mistake. Rather, the language used in the letter was a tell-tale pronouncement to the public that the IRS suspected that Dr. Barrett's conduct met the severe standards of willful violation for which the physician was subject to criminal charges, indictment, possible conviction, and a penitentiary sentence.
 
 
 38
 The disclosure of the fact that Dr. Barrett was under criminal investigation, in my view, could not possibly have been reasonably necessary to obtain information that would not otherwise be available. It seems unlikely to me that the number of responses received by the IRS, 81 to be exact, would have differed significantly had the letter disclosed only the fact that the income taxes of Dr. Barrett were under investigation. At the very least, it is clear that under our binding decision in Texas Heart it is up to the district judge to consider, at the enforcement proceeding, whether such a disclosure is reasonably necessary and whether he should condition his enforcement by eliminating such unnecessary disclosures that will mark the identified taxpayer as a federal criminal.
 
 
 39
 The majority concludes, nonetheless, that the problem is most adequately addressed through the vehicle of an action in damages under Sec. 7431. In these days of overloaded dockets and scarce judicial resources, the majority requires that the taxpayer commence a separate lawsuit to redress his injury, rather than avoiding the harm through the immediately available vehicle of conditional enforcement. In these days of budgetary deficits, they choose as the preferred remedy a damage action, when the necessity for paying such damages could be avoided in the first instance at the summons enforcement hearing.
 
 
 40
 That is why their decision is, in my view, simply unsound and is why I dissent.
 
 
 
 [1]
 Under United States v. Powell, 379 U.S. 48, 57-58, 85 S.Ct. 248, 254-55, 13 L.Ed.2d 112 (1964) the government must meet four requirements in order to obtain enforcement of its summons by a district court: the government must show (1) that the summons was issued for a legitimate purpose; (2) that the information sought may be relevant to that purpose; (3) that the information sought is not already within the IRS Commissioner's possession and (4) that all administrative steps required by the Internal Revenue Code have been followed
 
 
 [2]
 It is conceded by the government that the proposed mailings to Barrett's patients contain "return information."
 
 
 [3]
 Section 7431 was added to the Code by section 357(a) of the Tax Equity and Fiscal Responsibility Act of 1982 (TEFRA), Pub.L. No. 97-248, 96 Stat. 324. Section 357(b)(1) repealed former section 7217 of the Code. Former section 7217 provided a right of action against the individual who made the disclosure, and remains effective for disclosures made prior to the effective date of TEFRA, September 3, 1982. Section 357(c) of TEFRA. Section 7217 would be applicable to Hanson's first mailing to Barrett's patients. Future contacts with patients which might be determined to be actionable would be governed by section 7431
 
 
 [4]
 The instant case is a perfect illustration of the wisdom of this position. While the IRS has been racing the statute of limitations Barrett has been leisurely asserting his section 6103(a) claims in the district and appellate courts. If we were to remand this case as Barrett desires, the statute of limitations would be almost certainly run with respect to the 1979 tax year before the IRS learned whether or not it had the authority to proceed with its investigation
 
 
 [5]
 In admonishing the district court on remand not to refuse to enforce the summonses altogether, the Texas Heart court advised that "even if the past disclosure was improper, the district court has discretion to condition enforcement of the summonses by requiring that the IRS agree to desist from further unlawful disclosures." 755 F.2d at 482. We do not attach the same degree of significance to this statement as does the dissent. The district court indeed does have "discretion to condition enforcement of the summonses" if unconditional enforcement would constitute an abuse of the court's process. But, whether the IRS's efforts to obtain enforcement amount to an abuse of process is an issue left unresolved by Texas Heart. The opinion holds only that "it may well be an abuse of process to allow enforcement of summonses when the IRS concedes it will continue to unlawfully disclose taxpayer return information." 755 F.2d at 482 (emphasis added). On remand, Texas Heart instructed the district court to determine whether the IRS was authorized, under section 6103(k)(6) to disclose the fact of the IRS's investigation of Barrett to his patients; it did not, however, instruct the district court to decide whether enforcement of the summonses would constitute an abuse of process. The opinion merely states that "[t]he district court's [previously expressed] concern regarding an abuse of process is reached only if it concludes that disclosure by the IRS is not authorized." Id. at 482