**STEPHENS BOAT CO., INC.**

v.

**The BARGE "ORR 1", et al.**

Civ. A. No. 91–3235.

United States District Court,
E.D. Louisiana.

April 2, 1992.

George V. Baus, Adams & Reese, New Orleans, La., for plaintiff.

Carter K.D. Guice, Asst. U.S. Atty., New Orleans, La., for intervenor, U.S.

## ORDER AND REASONS

MENTZ, District Judge.

Before the Court are two motions of the United States: its Motion to Stay Sale to Enforce Judgment, and its Motion to Set Aside Default Judgment and Dismiss Complaint to Enforce Lien. For the reasons set out below, the Court finds the second motion to be well taken in part, and the first to be moot in light of the action ordered herein to dispose of the second.

### I. *Facts*

Agents of the U.S. Customs Service seized the barge ORR1 from the shipyard of Stephens Boat Co., Inc., the builder of the barge. At the time of the seizure, Stephens Boat was holding the barge pending payment of sums due for parts and labor that Stephens Boat had incurred in outfitting the barge for its intended use. According to Customs, the barge was subject to forfeiture due to the existence of hidden compartments incorporated into its hull. Stephens Boat filed suit in this Court both *in rem* and *in personam* to recover the money it claims it is due. The Clerk of Court entered default on September 26, 1991, and the United States intervened on October 2, 1991, and began conducting discovery. On October 16, 1991, this Court entered a default judgment against the barge *in rem*. Stephens Boat sought to sell the barge to enforce its lien, and the United States responded with the motions described above.

### II. *The Character of the Dispute*

Because each of the three actions that the United States has requested the Court to take depends at least partially upon the nature of the interest that Stephens Boat is able to assert against the barge, the Court will define that interest at the outset of this opinion. The United States asserts that the debt that Stephens Boat seeks to satisfy by proceeding against the vessel is not within the maritime jurisdiction of the United States. In light of the argument of the United States and of evidence that discovery has recently revealed, the Court agrees. Stephens Boat argues that "[a]t the time that title was transferred to the purchaser and the Barge was registered under foreign flag, the contract for construction of the Barge had been completed, the Barge had been launched and the price paid therefor."[1] However,

1. Memorandum in Opposition to Motion to Set Aside Default Judgment & Dismiss Complaint to Enforce Lien at 6–7.

the Court notes and approves the following statement of the law:

> In the United States it is settled by authority that a contract for building of a ship, or supplying materials for her construction, is not a maritime contract. The Supreme Court so held in 1857 in *People's Ferry Co. v. Beers,*[2] and has followed that ruling both in dicta and decision in every subsequent case in which the subject has been presented or reference to it made."[3]

The Barge's having been launched is of no consequence, as the Supreme Court has ruled:

> [C]ounsel for appellant insist that there is a broad distinction between [a vessel construction contract] and *one for work and material to finish a vessel after she has been launched* and is waterborne.... [However,] we think the same reasons which exclude such contracts from admiralty jurisdiction likewise apply to agreements made after the hull is in the water, for the work and material necessary to consummate a partial construction and bring the vessel into condition to function as intended.

*The FRANCIS MCDONALD,* 254 U.S. 242, 244–45, 41 S.Ct. 65, 66, 65 L.Ed. 245 (1920) (emphasis added).

■ Moreover, even if the Barge had embarked upon a short voyage before its completion, the outcome would be the same: the additional equipment that Stephens Boat installed was "necessary to outfit the new vessel for its intended purpose,"[4] and, as a consequence, the contract providing for the installation of that equipment was "merely preliminary to [its] use as an instrumentality of commerce and navigation." *B & B Salvage & Rigging, Inc. v. M/V NORTH BEND,* 548 F.Supp. 123, 124 (E.D.Mo.1982).[5] A contract that falls outside the admiralty jurisdiction of the United States cannot give rise to a maritime lien. *See E.S. Binnings, Inc. v. M/V SAUDI RIYADH,* 815 F.2d 660 (11th Cir.1987). Thus, Stephens Boat's only right against the barge is a state-created lien of a maritime nature under La.Civ. Code art. 3237, rather than a maritime lien.

### III. *Motion to set aside default judgment*

■ The United States moves to set aside the *in rem* default judgment against the barge, arguing as follows:

> Rule 55(e) of the Federal Rules of Civil Procedure sets out, "No judgment by default shall be entered against the United States or an officer or agency thereof unless the claimant establishes a claim or right to relief by evidence satisfactory to the court." A default should not stand against the government on this basis of this provision alone. However, even if the United States did not have the benefit of this rule, the United States intervention would defeat the default.[6]

The argument of the United States is incorrect for the simple reason that no default judgment of any kind has been entered against it. Foreclosure of an interest in a vessel against that vessel *in rem* is not a default judgment "against" the United States, even where the latter has already commenced judicial forfeiture proceedings against the vessel. *General Elec. Credit Corp. v. The Oil Screw TRITON VI,* 712 F.2d 991 (5th Cir.1983).

---

2. 61 U.S. (20 How.) 393, 15 L.Ed. 961 (1858).

3. 1 Benedict on Admiralty § 186 at 12–30 (citations omitted).

4. The additional equipment consisted of "[a]ll the skegs, all the hydraulic systems, all the electrical systems, all of the pumping system, all of the freshwater system, including two aluminum water tanks." Deposition of Wilbert Stephens, Jr., October 14, 1991, at 61. The purpose of this equipment was "[f]or recovering sand for dredging, for providing water, electricity, and fuel to support [the owner's] vessels, for providing air to his divers, for spudding down in an area where waves could not move the barge or dislocate it from the place that they wanted to work it over, the towing apparatus to tow the barge." *Id.* at 62.

5. *Accord* T. Schoenbaum, *Admiralty and Maritime Law* § 3–10 at 99 (1987).

6. United States' Motion to Set Aside Default Judgment & Dismiss Complaint to Enforce Lien at 4–5.

The motion of the United States is well taken for a reason other than the one it argued, however. While a proper default judgment can be rendered against a vessel despite the potential forfeiture interest of the United States, such a judgment is inappropriate where the Court lacks jurisdiction to render it. As a general matter, Federal courts are empowered to enforce state created liens; "[s]tate legislation, maritime in nature but applicable to areas not considered by federal maritime law or covered by enactments of Congress, is enforceable in the federal courts...." *Grow v. Steel Gas Screw LORAINE K,* 310 F.2d 547, 549 (6th Cir.1962).[7] Specifically, liens arising under La.Civ.Code art. 3237 are enforceable by this Court both *in personam* and *in rem. Equilease Corp. v. M/V SAMSON,* 568 F.Supp. 1259, 1264 (E.D.La.1983) (Mentz, J.), *rev'd on other grounds,* 756 F.2d 357 (5th Cir.1985).

However, the Court's power to grant relief *in rem* is limited to causes brought under the maritime jurisdiction of the United States. "In the absence of admiralty jurisdiction, [*in rem*] remedies are not available." *Cary Marine, Inc. v. The M/V PAPILLON,* 872 F.2d 751, 754 (6th Cir. 1989).[8] Thus, because this Court's default judgment of October 16, 1991, against the Barge *in rem* was void, the Court will vacate that judgment pursuant to Fed. R.Civ.P. 60(b)(4).

IV. *Motion to dismiss complaint*

The United States also contends that it is entitled to dismissal under Fed. R.Civ.P. 12(b)(6) on the ground that Stephens Boat has failed to state a claim on which relief could be granted. However, "[t]he mere existence of the forfeiture statutes do[es] not preclude this admiralty proceeding, particularly where the private action[ is] the first filed...." *Rayon Y Celanese Peruana v. M/V PHGH,* 471 F.Supp. 1363, 1367 n. 5 (S.D.Ala.1979).[9] The Court finds no merit in the assertion of the United States that Stephens Boat cannot maintain this action simply because the Customs Service has seized the vessel and the United States intends to bring forfeiture proceedings against it.

Moreover, even if forfeiture proceedings were currently going forward, any interest that the United States could assert would be junior to that of Stephens Boat under its state-created lien. The United States cites many nonmaritime cases for the proposition that "[i]t is a well-established principle of law that when property is subject to forfeiture for violation of the law, title vests absolutely in the government on the date of the illegal act.... Since the forfeiture actually occurs at the moment of the illegal use, no third party can acquire a legally cognizable interest in the property after the date of the illegal act which forms the basis of the forfeiture." [10]

This is plainly incorrect. From the outset of this dispute, Stephens Boat has claimed innocent lienholder status, and the United States has not challenged that status in any of its pleadings.[11] The rights of

---

7. *See also* T. Schoenbaum, *Admiralty and Maritime Law* 260 (1987) ("rarely a lien may be recognized under state law for something furnished to a vessel that is not accorded lien status under the Lien Act. Such state legislation, maritime in nature but applicable to areas not covered by federal maritime law, may be enforced *in rem* in federal court."); *Accord City of Erie v. S.S. NORTH AMERICAN,* 267 F.Supp. 875, 880 (W.D.Pa.1967) *Burdine v. Walden,* 91 F.2d 321 (5th Cir.1937); *Murray v. The METEOR,* 83 F.Supp. 212 (E.D.N.Y.1949); *Goudy & Stevens, Inc. v. Cable Marine, Inc.,* 665 F.Supp. 67 (D.Me.1987).

8. *Accord Powell v. Offshore Navigation, Inc.,* 644 F.2d 1063, 1065 n. 3. (5th Cir.1981); T. Schoenbaum, *Admiralty and Maritime Law* 620 (1987)

("Admiralty's distinctive process *in rem* is within exclusive admiralty jurisdiction and may not be used in a diversity case.)"

9. *Accord The ERMIS,* 33 F.2d 763, 764 (S.D.Fla. 1929).

10. Motion to Set Aside at 10.

11. It is evident from the oral assertions of representatives of the U.S. Attorney's office and the Customs Service that the United States may well challenge Stephens Boat's innocent lienholder status in the judicial forfeiture proceedings that will follow this opinion. However, the United States has made no attempt as yet to put on evidence in this action to establish Stephens Boat's complicity in any wrongdoing, and the

such a lienholder "are protected, whether [its lien] arose before or after the unlawful act was committed, so long as [it] had no knowledge of the master's or owner's intention to engage in an illegal venture and did not in any way join in the execution of the violation." 2 *Benedict on Admiralty* § 65 at 5–16 (1991).[12] Consequently, Stephens Boat is entitled to full payment of its state-created lien interest before the United States can recover based upon its forfeiture claim. *See* Varian, *Rank and Priority of Maritime Liens*, 47 Tul.L.Rev. 751, 763 (1973).[13] Thus, the Court will continue to entertain this action.

V. *Other matters*

■ Because the default judgment upon which Stephens Boat sought to sell the barge is vacated herein, the Motion to Stay Sale to Enforce Judgment of the United States is denied as moot. In addition, this opinion does not address the appropriateness of the arrest of the barge that this Court ordered when it appeared that this was a maritime cause. That arrest is now suspect because it appears that the sole basis of this Court's subject matter jurisdiction is diversity of citizenship and amount in controversy under 28 U.S.C. § 1332. The Court will entertain the briefs of counsel on this issue as specified below. Finally, it appears to the Court that Stephens Boat filed an appropriate bond under 19 U.S.C. § 1608 in October, 1991 [14] and that the United States' delay in filing judicial forfeiture proceedings is unwarranted. Stephens Boat has made repeated entreaties both of the Court and of the United States for these several months that such proceedings commence as soon as possible. "If the seizing officer should refuse to

institute proceedings to ascertain the forfeiture, the district court may, upon application of the aggrieved party, compel the officer to proceed to adjudication, or to abandon the seizure." *Slocum v. Mayberry*, 15 U.S. (2 Wheat.) 1, 9, 4 L.Ed. 169 (1817) (Marshall, J.). The Court will enter such an order in this case.

Accordingly,

IT IS ORDERED that

(1) The Motion to Stay Sale to Enforce Judgment of the United States is DENIED AS MOOT;

(2) The Motion to Set Aside Default Judgment and Dismiss Complaint to Enforce Lien of the United States is GRANTED IN PART AND DENIED IN PART as follows:

(a) The default judgment of October 16, 1991 against the Barge ORR1 *in rem* is hereby VACATED pursuant to Fed.R.Civ.P. 60(b)(4);

(b) The order of this court dated December 12, 1991, authorizing sale of the barge is hereby REVOKED; and

(c) Dismissal under Fed.R.Civ.P. 12(b)(6) is DENIED;

(3) The United States is hereby ORDERED either to commence judicial forfeiture proceedings against the Barge ORR1 no later than Friday, April 10, 1992, at 5:00 p.m., or to abandon the seizure of that vessel; and

(4) The United States and Stephens Boat Co., Inc., are ORDERED to file briefs with the Court addressing the effects, if any, of this opinion upon the arrest of the Barge ORR1 that this Court ordered on August 29, 1991, no later

Court finds it inappropriate to attribute wrongful actions or guilty knowledge to Stephens Boat without such evidence.

**12.** *Accord* Gilmore & Black, *The Law of Admiralty* 759 (1975); *The ST. JAGO DE CUBA*, 22 U.S. (9 Wheat.) 409, 6 L.Ed. 122 (1824). *See also* 2 *Benedict on Admiralty* § 65 at 5–16 n. 3 (1991) (citing numerous cases for this same proposition).

**13.** The ranking set out in this article is definitive. *See, e.g., United States v. One (1) 254 Ft.*

*Freighter, M/V ANDORIA*, 570 F.Supp. 413, 415 (E.D.La.1983), *aff'd*, 768 F.2d 597 (5th Cir.1985); *Rayon Y Celanese Peruana v. M/V PHGH*, 471 F.Supp. 1363, 1369 (S.D.Ala.1979); 1 David B. Smith, *Prosecution and Defense of Forfeiture Cases* ¶ 3.05 at 3–38 (1991); Gilmore & Black, *The Law of Admiralty* 737 n. 307(c) (2d ed. 1975).

**14.** The Assistant U.S. Attorney assigned to this case represented in a telephone conference with Court personnel on March 26, 1992, that Stephens Boat had done this.

than Wednesday, April 8, 1992, at 5:00 p.m.