837 F.2d 1341
 61 A.F.T.R.2d 88-681, 56 USLW 2493, 88-1
USTC P 9193
 UNITED STATES of America and Michael O. Hanson, Special
Agent of the Internal Revenue Service, Plaintiffs-Appellees,
v.
Bernard M. BARRETT, Jr., as President of Plastic and
Reconstructive Surgeons, P.A., Houston, Texas,
Defendant-Appellant.
 No. 85-2054.
 United States Court of Appeals,
Fifth Circuit.
 Feb. 24, 1988.
 
 Edward D. Urquhart, Charles J. Fisher, Silvia T. Hassell, Urquhart & Hassell, Houston, Tex., for defendant-appellant.
 Henry K. Oncken, U.S. Atty., James R. Gough, Asst. U.S. Atty., Houston, Tex., William A. Whitledge, Glenn L. Archer, Jr., Asst. Atty. Gen., Tax Div., Michael L. Paup, Chief, U.S. Dept. of Justice, Charles E. Brookhart, Washington, D.C., for plaintiffs-appellees.
 Appeal from the United States District Court for the Southern District of Texas.
 Before CLARK, Chief Judge, BROWN, GEE, RUBIN, REAVLEY, POLITZ, CAROLYN DINEEN KING,* JOHNSON, WILLIAMS, GARWOOD, JOLLY, HIGGINBOTHAM, DAVIS, and JONES, Circuit Judges.**
 PER CURIAM:
 
 
 1
 The question presented in this appeal is whether a district court can conditionally enforce an Internal Revenue Service (IRS) summons to ensure that the IRS will not violate the nondisclosure of return information provisions contained in 26 U.S.C. Sec. 6103 while it conducts a tax investigation. We answer this question in the negative.I.
 
 
 2
 The facts giving rise to the present controversy, as set forth in the panel opinion on rehearing in United States v. Barrett, 804 F.2d 1376 (5th Cir.1986) (Barrett II ), are as follows:
 
 
 3
 [Dr. Bernard M. Barrett, Jr.] is the president of an incorporated medical practice specializing in plastic and reconstructive surgery. In 1979 the IRS began an audit of Barrett's personal and corporate income tax returns for the years 1976, 1977, and 1978. When the initial investigation uncovered a $100,000 discrepancy between Barrett's books and his bank records, the IRS transferred the case from its civil to its criminal division.
 
 
 4
 Agent Michael O. Hanson, to whom the case was transferred, determined that it would be necessary to inquire of Barrett's patients the amount each had payed for Barrett's services. To this end, Agent Hanson sent two sets of summonses calling for patient's records, one to the hospitals where Barrett practiced and one to Barrett himself. All but four of the hospitals complied with the summonses providing a total of 350 patients' names. [Barrett has also complied with the summons.] Agent Hanson then sent a letter to each patient advising that Barrett was being investigated by the Criminal Investigation Division of the IRS and requesting documentation of fees paid to Barrett.
 
 Barrett II, 804 F.2d at 1377.[1]
 
 5
 In United States v. Texas Heart Institute, 755 F.2d 469 (5th Cir.1985), the district court refused to enforce the summonses issued to the hospitals. A panel of this court reversed that decision and remanded the case to the district court for a determination of whether the mailing of the letters to Barrett's patients would be a violation of 26 U.S.C. Sec. 6103, and, if so, whether enforcement should be conditioned upon requiring the IRS to desist from further unlawful disclosures. 755 F.2d at 482.
 
 
 6
 In the initial panel opinion in this case, United States v. Barrett, 787 F.2d 958 (5th Cir.1986) (Barrett I ), this court upheld the district court's decision to enforce unconditionally the summons issued to Dr. Barrett. The court also limited the scope of Texas Heart, refusing to hold that a violation of section 6103 was grounds to deny enforcement of, or to conditionally enforce, the summons. Judge Brown dissented, arguing that the court had implicitly overruled Texas Heart. Dr. Barrett subsequently filed a petition for rehearing. The court responded by withdrawing its earlier opinion, affirming the enforcement of the summons, but also remanding the case to the district court for it to follow Texas Heart and inquire whether section 6103 was being violated; if so, then the court was to conditionally enforce the summons to prevent the IRS from making disclosures in violation of section 6103. The government petitioned for a rehearing of that decision. This court granted the request, agreeing to rehear the case en banc.
 
 
 7
 In this appeal the government contends that the holding in Texas Heart that a district court has the authority to enter conditional summons enforcement orders to prevent a violation of section 6103 should be overruled. The government also contends that the district court's order unconditionally enforcing the summons in this case is correct and should be affirmed. Barrett responds that district courts hearing an IRS summons enforcement proceeding have long been held to have the power to modify a summons to prevent a violation of law by IRS officials or to protect the rights of a taxpayer. Thus, it is argued that district courts should be allowed to consider section 6103 in deciding whether to conditionally enforce the summons.[2] Therefore, we must examine the validity of the rule established in Texas Heart that in a summons enforcement proceeding a district court can consider whether a section 6103 violation may occur, and, if it does so find, determine whether to conditionally enforce the summons. The first issue we must address is whether the case before us is moot. Before we examine that issue, however, we briefly discuss the relevant background necessary to decide the mootness issue.
 
 II.
 
 8
 This case involves the construction of a number of Internal Revenue Code (the Code) provisions. First, section 6103(a)[3] establishes a general rule that tax returns and tax return information are confidential and may not be disclosed by officers and employees of the United States.[4] If a government official violates the nondisclosure provisions of section 6103(a), he is subject to criminal prosecution under section 7213(a)(1). This section makes it unlawful to disclose any return or return information except as authorized by the Code. A willful violation is punishable by a fine of up to $5,000, or imprisonment of up to a period of 5 years, or both. 26 U.S.C. Sec. 7213(a)(1). Moreover, if return information is impermissibly disclosed, section 7431 provides the aggrieved person with a civil remedy. The person can bring a cause of action against the United States, and can recover damages of a minimum amount of $1,000 for each unauthorized disclosure. Id. Sec. 7431(c).
 
 
 9
 The other relevant provisions of the Code are those relating to the IRS's power to seek information relevant to a tax investigation. The IRS is authorized by section 7602(a) to issue a summons to compel any person having possession of books of account, papers, or other data to produce such materials when needed by the IRS to determine the correctness of a tax return or otherwise to determine the tax liability of an individual. If the person does not comply with the summons, the IRS can file a petition for enforcement with the district court. 26 U.S.C. Sec. 7604.
 
 
 10
 In United States v. Powell, 379 U.S. 48, 85 S.Ct. 248, 13 L.Ed.2d 112 (1964), the Supreme Court set forth four criteria that the IRS must establish in order to have a summons enforced:
 
 
 11
 (1) The IRS agent must show that the investigation will be conducted pursuant to a legitimate purpose;
 
 
 12
 (2) that the inquiry may be relevant to the purpose;
 
 
 13
 (3) that the information sought is not already within the IRS's possession; and
 
 
 14
 (4) that the administrative steps required by the Code have been followed.
 
 
 15
 Powell, 379 U.S. at 57-58, 85 S.Ct. at 255. The Court also instructed that a court could inquire into the underlying reasons for the examination and that it should not permit its process to be abused. Id. at 58, 85 S.Ct. at 255. "Such an abuse would take place if the summons had been issued for an improper purpose, such as to harass the taxpayer or to put pressure on him to settle a collateral dispute, or for any other purpose reflecting on the good faith of the particular investigation." Id.
 
 
 16
 The government bears the initial burden of proving that the four Powell requirements have been satisfied. Texas Heart, 755 F.2d at 474. Once the government makes the required Powell showing, the burden then shifts to the party resisting the summons to challenge the summons on any appropriate ground. Powell, 379 U.S. at 58, 85 S.Ct. at 255 (quoting Reisman v. Caplin, 375 U.S. 440, 449, 84 S.Ct. 508, 513, 11 L.Ed.2d 459 (1964)). These grounds include that the IRS has failed to meet one of the four Powell requirements, or that the enforcement of the summons would abuse the court's process.
 
 III.
 
 17
 Before we reach the merits in this appeal, we must address the preliminary issue of whether the case before us is moot. Although neither party has raised the mootness issue, this court is required to do so sua sponte, because this issue implicates the article III requirement that there be a live case or controversy.[5] Donovan v. Air Transport District Lodge No. 146, 754 F.2d 621, 624 (5th Cir.1985). The mootness concern is based upon the fact that Dr. Barrett ultimately complied with the summons after he was unable to obtain a stay of the district court's summons enforcement order. This court has often held that an appeal from an order enforcing a summons becomes moot once the taxpayer complies with the summons. See United States v. Sherlock, 756 F.2d 1145, 1146 (5th Cir.1985); United States v. Sweet, 655 F.2d 54, 55 (5th Cir.1981); United States v. First American Bank, 649 F.2d 288, 289 (5th Cir.1981); United States v. First State Bank of Clute, 626 F.2d 1227, 1227 (5th Cir.1980), cert. denied, 452 U.S. 908, 101 S.Ct. 3037, 69 L.Ed.2d 410 (1981); United States v. Carpenter, 425 F.2d 264, 264-65 (5th Cir.1970); Baldridge v. United States, 406 F.2d 526, 527 (5th Cir.1969); Grathwohl v. United States, 401 F.2d 166, 167 (5th Cir.1968); Lawhon v. United States, 390 F.2d 663, 663 (5th Cir.1968).
 
 
 18
 Thus, in Sherlock we held that since Sherlock complied with the summons, his appeal was moot. Sherlock's argument that the government continued to benefit from the material did not persuade the court otherwise. 756 F.2d at 1146. In First American Bank this court also held that compliance with a summary enforcement order mooted an appeal from that order. The appellants argued that the issues were not moot because, if their contentions that the district court erred in determining that the summonses had a valid civil investigative purpose and that the IRS agent violated the automatic stay provision of Fed.R.Civ.P. 62(a) were correct, the IRS could not use the documents so obtained in any future civil or criminal proceeding. The court disagreed, stating that, "The possibility that evidence must be suppressed in a future proceeding, however, is not enough to prevent mootness in this case." 649 F.2d at 289. In Carpenter this court, without elaboration, held that the appeal of a summons enforcement order that had been complied with was moot. 425 F.2d at 265. Likewise, in Baldridge the appellants had complied with the summons, so the court held the case to be moot. The court also disagreed that a question of substantial public interest should allow the case to prevent its mootness, or again that the court should hear the appeal to determine whether the records would be admissible in a subsequent criminal or civil trial. 406 F.2d at 527. In Grathwohl this court stated that since the appellant had appeared and complied with the summons, there was no relief that she could obtain on appeal and the case was moot. 401 F.2d at 167. Finally, in Lawhon we held that there were no issues to decide because the records and books that were the subject of the order to produce had been produced. Thus, the court dismissed the appeal for mootness. 390 F.2d at 663. On motion for reconsideration, the court stated, in what has become an often quoted passage:
 
 
 19
 This motion, in effect, seeks to have this court give an advisory opinion as to the admissibility in evidence of the records or their product in the event of a subsequent criminal trial. Such event may not occur. This court passes no judgment on the question whether, if the mooted records are used in a subsequent prosecution of the taxpayers, if there be one, their introduction would be forbidden as violating the constitutional rights of the defendants.
 
 
 20
 Id. at 663.
 
 
 21
 Although none of the above authority provide much analysis, apparently the common denominator in each is that once an individual complies with a summons enforcement order, that person is precluded from appealing any issues that attack the validity of the district court's decision to enforce the summons. Even an attack on the enforcement of a summons based on the fact that information obtained by the summons may be used improperly in a subsequent civil or criminal proceeding is not enough to prevent the case from being moot.
 
 
 22
 Many other circuits have also held that compliance with an IRS summons moots an appeal of the validity of the summons enforcement order.[6] The basis for these decisions, whether implicit or explicit, is the proposition that "federal courts are without power to decide questions that cannot affect the rights of litigants in [the] case before them." North Carolina v. Rice, 404 U.S. 244, 246, 92 S.Ct. 402, 404, 30 L.Ed.2d 413 (1971). Thus, once an individual complies with a summons enforcement order and produces the documents, a successful challenge to the enforcement order could afford no relief; the information has already been provided and thus this court would be powerless to provide relief that would affect the rights of the litigants.
 
 
 23
 Based on this precedent, the government contends that since the IRS has been supplied with all the information it sought pursuant to the summons, the case should be dismissed as moot. In determining whether this controversy is moot, it is necessary to keep in mind the single issue that has been presented to the court: whether a district court can conditionally enforce a summons in order to prevent the government from violating section 6103.
 
 
 24
 To decide whether this issue can survive a mootness challenge, it is helpful to first examine both the holding in Texas Heart that forms the basis of the government's contention and our opinion in Barrett II. In Texas Heart this court was faced with the issue of whether the district court correctly declined to enforce summonses issued to four hospitals. We reviewed the issue under the four part test established in Powell. The portions of Texas Heart relevant to this appeal are the court's analysis of the "legitimate purpose" prong of the Powell test and the "abuse of process" inquiry that a court should also make.
 
 
 25
 The court in Texas Heart found that the IRS did have a legitimate purpose, 755 F.2d at 479, but then addressed Dr. Barrett's contentions that the IRS lacked a legitimate purpose because of alleged violations of section 6103. Id. The court pointed out that an improper disclosure of section 6103 information was relevant only to the extent that it would demonstrate either an abuse of process or a lack of legitimate purpose, id., but concluded that if there were any improper disclosures, they did not demonstrate either bad faith or an improper purpose. Id. The court went on to note, however, that:
 
 
 26
 This Court does not hold that unlawful disclosures of returns or return information by the IRS can never be sufficient evidence of lack of a legitimate purpose for the investigation such that IRS summonses should not be enforced. Rather, this Court holds that in this case, even accepting as true that improper disclosures occurred, any alleged improper disclosures do not rise to the level necessary to demonstrate bad faith in the issuance of the summonses or lack of a legitimate purpose for the investigation.
 
 
 27
 Id. at 481 (emphasis in original). Even though the improper disclosures did not reflect a sufficient degree of bad faith or lack of legitimate purpose to deny enforcement of the summons in their entirety, the court held that the district court nevertheless could require the IRS to abide by section 6103 before it would order enforcement of the summonses. Id.
 
 
 28
 Thus, this language allows a summoned individual to raise the issue of a section 6103 violation to attempt to defeat the enforcement of the summons. If a violation does not rise to a sufficient level to defeat the enforcement of the summons, though, it nevertheless can still cause the enforcement of the summons to be conditioned. This remedy forms part of the basis of the government's contention that Texas Heart incorrectly established that a district court can conditionally enforce a summons.
 
 
 29
 The government's objection to Texas Heart is also based on the court's discussion dealing with the abuse of process inquiry a court must make. While the court found no abuse of process to such a degree that it would be necessary to deny enforcement of the summons, the court did note that it still could be an abuse of process to allow enforcement of summonses when the IRS conceded that it would continue to disclose information in violation of section 6103. Id. at 482. The court did not point out in that discussion, however, whether a violation of section 6103 would be sufficient to completely deny enforcement of the summons. From the prior discussion relating to "legitimacy of purpose," however, it appears that enforcement could be completely denied if an abuse of process was established. See id. at 479, 481. Nevertheless, the court clearly held that if an abuse of process were found, the district court would have the discretion to condition enforcement of the summonses by requiring that the IRS agree to desist from further violations of section 6103. Id. at 482. The court in Texas Heart then established the inquiry the district court would be required to make prior to conditioning the enforcement of the summons:
 
 
 30
 (1) determine whether the described information falls under the definition of returns or return information in section 6103, and
 
 
 31
 (2) if so, the district court must further determine whether the IRS is authorized to disclose the information under section 6103(k)(6).
 
 
 32
 Id. at 482.
 
 
 33
 The court stated in Barrett II that in Barrett I it misgauged the scope of the holding in Texas Heart. See Barrett II, 804 F.2d at 1377. The concern, however, was not with whether the summons was properly enforced by the district court.[7] Rather, the single issue resolved by the opinion in Barrett II was whether a summons could be conditionally enforced:
 
 
 34
 [W]e find that our mandate in Texas Heart requires the district court to consider whether enforcement of the IRS summons should be conditioned in order to protect Barrett against unnecessary disclosure of the fact that he is under criminal investigation. We affirm the order of the district court enforcing the IRS summons; we remand for the district court to determine whether the summons should be conditionally enforced.
 
 
 35
 Id. at 1379. In compliance with Texas Heart, the opinion in Barrett II decided to remand the case, not for the purpose of having the district court delve into the propriety of enforcement, but instead to determine whether the district court should condition the enforcement of the summons to protect Dr. Barrett from a violation of section 6103. We have consistently treated the issues of (1) whether the enforcement order was properly rendered and (2) whether an enforcement order can be conditionally enforced as distinct issues on appeal.
 
 
 36
 With this same distinction in mind we now consider whether the issue in this appeal is moot. Barrett II would have remanded the case to the district court for it to determine whether the summons should be conditionally enforced based on Texas Heart. See Barrett II, 804 F.2d at 1379. Since Dr. Barrett has complied with the summons, Judge Rubin's dissent argues that the enforcement proceeding is over and we can consider no aspects of that proceeding, including whether Texas Heart requires that the summons should be conditionally enforced. However, we do not agree that such a result is mandated. We recognize that in Texas Heart the enforcement order had not been complied with by the four hospitals, and, in fact, the district court had refused to enforce the summonses, so the controversy was still alive in all respects. But, the court reversed the district court and ordered that the summonses be enforced. Even though the enforcement issue had been decided, the court still held that the district court retained the authority to determine whether section 6103 was being violated, and, if so, to condition enforcement to avoid the violation. Thus, that same issue that we held was alive and must be considered by the district court in Texas Heart is likewise the sole justiciable issue in the present case.
 
 
 37
 Moreover, the conditional enforcement issue does not attack the validity of the district court's order to enforce the summons. Thus cases such as Sherlock do not control here. Those cases prevent a party from appealing the validity of an enforcement order after the party had complied with the enforcement order by having furnished the IRS with the sought after material. The issue here does not address the validity of the enforcement order. Instead, it addresses whether the district court after a decision to enforce a summons can attach conditions on the government's use of the information obtained under the summons. The district court in Barrett II did not decide whether there was a violation of section 6103, and, if so, whether to condition enforcement of the summons on the government's compliance with that section. If we were to hold that Texas Heart was correct and the district court should have made such an inquiry, we could then provide relief to Dr. Barrett by remanding the case to the district court for such consideration. We point out that the IRS has not yet contacted Dr. Barrett's patients and section 6103 information has not yet been disclosed.[8] Thus, if we were to remand this cause to the district court, it could prevent the IRS from violating this section. This is the relief Dr. Barrett desires.
 
 
 38
 Accordingly, we conclude that the conditional enforcement issue presented in this appeal is not moot, and we, therefore, decide whether a district court can conditionally enforce a summons order so as to prevent violations of section 6103.[9]IV.
 
 
 39
 We begin by noting two important considerations in summons enforcement proceedings. First, we point out that these proceedings are intended to be summary in nature. The sole purpose of the enforcement proceedings is to ensure that the IRS has issued the summons for a proper purpose and in good faith. See Powell, 379 U.S. at 57-58, 85 S.Ct. at 255. Also, this is only an investigative stage; no guilt or liability on the part of the taxpayer is established. The enforcement proceeding should be concluded expeditiously so that the actual investigation can be continued with the goal of reaching the final determination of whether there will be any civil or criminal liability for the taxpayer.
 
 
 40
 We also recognize that the Supreme Court has consistently declined to circumscribe the breadth of the summons authority that Congress intended to grant the IRS, " 'absent unambiguous directions from Congress.' " United States v. Arthur Young & Co., 465 U.S. 805, 816, 104 S.Ct. 1495, 1502, 79 L.Ed.2d 826 (1984) (quoting United States v. Bisceglia, 420 U.S. 141, 150, 95 S.Ct. 915, 921, 43 L.Ed.2d 88 (1975)); United States v. Euge, 444 U.S. 707, 715, 100 S.Ct. 874, 880, 63 L.Ed.2d 141 (1980). For example, in Powell the Supreme Court refused to read into section 7605(b), which prohibits "unnecessary examination[s]," a requirement that enforcements of summonses be founded on probable cause. The Court reasoned that "[a]lthough a more stringent interpretation is possible ... we reject such an interpretation because it might seriously hamper the Commissioner in carrying out investigations he thinks warranted...." 379 U.S. at 53-54, 85 S.Ct. at 253, quoted in Euge, 444 U.S. at 715, 100 S.Ct. at 880.
 
 
 41
 Similarly, in Donaldson v. United States, 400 U.S. 517, 91 S.Ct. 534, 27 L.Ed.2d 580 (1971), the Court declined to limit the summons authority to cases where no criminal prosecution was contemplated. "Any other holding," said the Court, "would thwart and defeat the appropriate investigatory powers that the Congress has placed in 'the Secretary or his delegate.' " 400 U.S. at 533, 91 S.Ct. at 544. Again, in Bisceglia the Court, finding no discernible contrary purpose by Congress, upheld the IRS's authority under section 7602 to issue a "John Doe" summons to a bank to determine the identity of unknown individuals who might be liable for unpaid taxes. The Court again broadly construed the IRS's summonsing authority in Euge to permit it to compel the execution of handwriting samples. A contrary result, reasoned the Court, would "stultify enforcement of federal law." 444 U.S. at 715, 100 S.Ct. at 880 (quoting Donaldson, 400 U.S. at 536, 91 S.Ct. at 545). Finally, in Arthur Young & Co., the Court declined to accord a privilege to an auditor's tax accrual workpapers. "We are unable," wrote the Court, "to discern the sort of unambiguous directions from Congress that would justify a judicially created work-product immunity for tax accrual workpapers summoned under Sec. 7602." 465 U.S. at 816, 104 S.Ct. at 1502.
 
 
 42
 Thus, the Court has refused to impose limitations upon the IRS's summons authority unless it found explicit Congressional directives to do so. We believe that this judicial constraint used to avoid limiting the IRS's summons authority applies equally in this case and a court should not conditionally enforce a summons. If a court were to do so, it would then potentially have to become involved in the proceeding again at a later date to ensure compliance with the conditions it imposed. There is no evidence of a Congressional intent to burden the "summary" nature of summons enforcement proceedings by allowing the district court to conditionally enforce a summons.
 
 
 43
 In fact, it appears that the intent of Congress was definitely not to burden the summary nature of the enforcement proceedings with such an inquiry. Rather than enact a statute authorizing the district court to conditionally enforce a summons to prevent the government from violating section 6103, Congress instead enacted civil remedies that allow an individual to bring suit against the United States and provided for criminal prosecution of the disclosing parties. These remedies clearly are intended to deter unnecessary disclosures of confidential information.
 
 
 44
 In a summons enforcement proceeding, the district court's only task is to determine whether the summons should or should not be enforced. This inquiry is limited to ensuring that the government has complied with the four Powell criteria, and that its process is not being abused. Powell, 379 U.S. at 57-58, 85 S.Ct. at 255. There is no statutory authority, nor congressional indication that existing statutes supply the authority, nor Supreme Court authority, to allow the district court to make any consideration except whether to enforce or not to enforce the summons. The district court does not have the power to conditionally enforce the summons. If good faith and a legitimate purpose are found to exist, the summons should be enforced. If they are not present, enforcement should be denied. There is no middle ground because to create that remedy would unduly hamper the investigative efforts of the IRS.
 
 
 45
 Dr. Barrett contends, however, that numerous decisions of this circuit provide district courts with the authority to condition a summons to protect the rights of taxpayers. While some of this authority may, arguably, support this view, most of it clearly does not, and we decline to adopt his position. The case that appears to most directly support Dr. Barrett's contention is Dunn v. Ross, 356 F.2d 664 (5th Cir.1966). In Dunn, the court held that a summons under section 7602 could require the production of records for years that were time-barred from investigation so long as the material from those years was relevant for the years that were under investigation that were not time-barred. Id. at 666. In support for his position that a summons should be conditionally enforced when necessary Dr. Barrett relies on the following language in Dunn:
 
 
 46
 Our decision, therefore, should not be construed as a blanket endorsement of summonses under 7602 requiring the production of a vast amount of books and papers, many of which might be totally irrelevant and the production of which would cause great hardship to the persons at whom such summonses are directed. The District Court has broad discretion in the protection of the taxpayer and of third parties against oppressive procedures by working out appropriate limitations on which records are subject to investigation and the best location for such inspection for all concerned.
 
 
 47
 Id. at 667 (citation omitted). One reading of the second sentence from this passage could support the view that a district court has discretion in deciding how or to what extent to enforce a summons, i.e., conditional enforcement. However, another reading of this language is that the district court has broad discretion in protecting taxpayers only by determining whether the sought after information is relevant. The relevancy inquiry is one of the Powell inquiries, and it only pertains to whether the summons should be enforced in its entirety. To the extent that Dunn can be read otherwise, to endorse the district court's ability to conditionally enforce a summons, it is overruled.
 
 
 48
 Our decision in Venn v. United States, 400 F.2d 207 (5th Cir.1968), is also cited by Dr. Barrett as support for his position. He argues that in Venn this court affirmed the conditional enforcement of a summons to prevent improper use of the summoned information. We do not read Venn so broadly. Venn dealt with the issue of whether an unrelated criminal prosecution of a third party would prevent enforcement of a summons, when the taxpayer had materials relating to that third party's tax liability. Id. at 209. The court held it would not. Additionally, there was an issue of whether all the material sought was relevant to the taxpayer's investigation. Id. We concluded that the government had not made such a showing. Thus, the issue in Venn that Dr. Barrett attempts to rely on as support for his position is one that deals with the scope of the enforcement order, i.e., what amount of information would the government be provided. This inquiry is also in the nature of asking whether the material is relevant. The case did not address the issue presented before us of whether conditions would be imposed on the government's use of the information once it was received. Venn, therefore, does not support Dr. Barrett.
 
 
 49
 Another decision, United States v. Roundtree, 420 F.2d 845 (5th Cir.1969), is also cited by Dr. Barrett as support for his position. He quotes the following language from the opinion which reads: "Furthermore, courts may limit the invasions of privacy through the individual scrutiny to which a summons is subject for its enforcement through the standards enumerated in Powell of legitimate purpose, proper procedure, relevance, and refusal to allow abuse of the courts' process," id. at 851, as support for the conditional enforcement inquiry we ordered in Barrett II. We do not believe this language supports that conclusion. The issue in Roundtree was whether a summons should be enforced, and what procedures were available to the taxpayer to assist him in attacking the summons. The court was not faced with the issue of whether to conditionally enforce the summons. Moreover, the language quoted by Dr. Barrett does not address the conditional enforcement of the summons, but rather it relates to the enforcement of the summons in its entirety.[10]
 
 
 50
 In sum, we do not believe that the cases cited by Dr. Barrett give rise to a conclusion that a district court can conditionally enforce a summons.[11]
 
 V.
 
 51
 We hold that in a summons enforcement proceeding the only issue that the district court can decide is whether to enforce the summons. The court cannot conditionally enforce that order. Therefore, we OVERRULE the holding in Texas Heart that a district court should determine whether section 6103 was violated, and, if so, to condition enforcement on compliance with that section. The issue presented today does not call for us to decide whether a court's enforcement order may impose conditions respecting the time, place, manner, form or circumstances in which some or all of what is sought by the subpoena will be furnished, or possibly other conditions precedent to the government's receipt, pursuant to the subpoena, of what it seeks thereby. The summons order in Barrett II is AFFIRMED in its entirety.
 
 
 52
 JOHN R. BROWN, Circuit Judge, with whom POLITZ, JOHNSON, and WILLIAMS, join concurring in part and dissenting in part:
 
 I.
 Case is Very Much Alive
 It is Not Moot
 
 53
 I concur in the court's decision that the case is not moot. To the court's discussion in Part III, I would point out that the issue was specifically raised in the original answer of Dr. Barrett, in his motion for new trial, and in the motion for stay of execution of judgment. Likewise, the parties considered it a very hotly contested issue in their respective briefs leading to Barrett I, United States v. Barrett, 787 F.2d 958 (5th Cir.1986); and later, Barrett II, United States v. Barrett, 804 F.2d 1376 (5th Cir.1986).[1]
 
 II.
 The Court's Decision is Faulty
 
 54
 But I dissent vigorously to the Court's overruling of Texas Heart and the holding of the majority that the United States District Court in the exercise of its residual, equitable discretion, may not, and has no power to, condition enforcement of the summons to prevent the disclosure of return information by the IRS in utilizing the summons (or information procured by it).
 
 
 55
 This result both rejects the Supreme Court's emphasis in Powell[2] that in the application for enforcement of an IRS summons, "it is the court's process which is invoked to enforce the administrative summons and a court may not permit its process to be abused." 379 U.S. at 58, 85 S.Ct. at 255, 13 L.Ed.2d at 120. And, even worse, the majority opinion thwarts the congressional determination that tax return information is confidential and may not, except under strictly limited circumstances, be disclosed.
 
 Enter the Tax Reform Act of 1976
 
 56
 We should not forget that the Tax Reform Act of 1976 brought about revolutionary changes, not the least of which was the positive declaration that returns and return information are confidential.[3] Likewise, the Act defines "return or return information" in the broadest way.[4] The term "disclosure" is equally broad, meaning "the making known to any person in any manner whatever a return or return information." Sec. 6103(b)(8).
 
 
 57
 That Congress specifically had in mind disclosures in the course of investigation of taxpayer's liability, civil or criminal, is reflected by Sec. 6103(k)(6):
 
 
 58
 (6) Disclosure by Internal Revenue officers and employees for investigative purposes.--An internal revenue officer or employee may, in connection with his official duties relating to any audit, collection activity, or civil or criminal tax investigation or any other offense under the internal revenue laws, disclose return information to the extent that such disclosure is necessary in obtaining information, which is not otherwise reasonably available, with respect to the correct determination of tax, liability for tax, or the amount to be collected or with respect to the enforcement of any other provision of this title. Such disclosure shall be made only in such situations and under such conditions as the Secretary may prescribe by regulation.
 
 
 59
 (Emphasis added)
 
 
 60
 This was the clear congressional intent reflected by the Senate Report[5] and in the strictly limited disclosure provisions.[6]
 
 
 61
 Revealing Criminal Investigation a Disclosure of Return Information
 
 
 62
 Although Texas Heart, in calling for a remand, spoke in terms of whether the revelation in the prior patient mailings that Dr. Barrett was under criminal investigation was a disclosure of return information[7] and in our several concurring and dissenting opinions in Barrett I and Barrett II, we continued that approach, it is now clear beyond any question that this revelation was return information.[8]
 
 The Breadth of Congressional Concern
 
 63
 Before trying to analyze whether the IRS and Agent Hanson have met either of the requirements of Sec. 6103 that the disclosure be (i) authorized[9] and (ii) necessary "in obtaining information which is not otherwise reasonably available"[10] it is essential to see the apprehended widespread evils with which Congress was dealing. Initially, there is the recognition by Congress that this was the first comprehensive review of the whole subject in over 40 years.[11]
 
 
 64
 Next, of importance, was the Congressional goal in reviewing the Internal Revenue Code (IRC) to give taxpayers greater and greater protection. Congress was aware of the complaints of literally millions of taxpayers concerning abuses in the administration of the IRC.[12] One of the problems to be resolved was the fact that the IRS probably has more information about more people than any other agency in the country.[13] More than that, Congress expressed the specific intention to discontinue prior practices or regulations. Only those regulations specifically interpreting Sec. 6103 have any validity.[14]
 
 
 65
 The extent to which Congress deliberately intended to constrict disclosure of these matters relating to the most intimate economic, financial and social facts concerning Americans--nearly all of whom are taxpayers--is crystalized by the Congressional restrictions imposed on others in the government who, statutorily at least, have had almost unlimited access to information through the disclosure of return information.
 
 
 66
 From the Top to the Bottom the President Being First
 
 
 67
 First, there were limitations on Presidential access to return information. Not only was the availability of such information carefully circumscribed, but the request for disclosure called for a written request, signed by the President personally. Section 6103(g).[15] The President, with all of his other manifold duties, is also required to file an annual report with the Joint Committee on the Internal Revenue, showing in detail the persons involved and the reasons the President required return information. S.Rep., p. 323, Bulletin, p. 361. Likewise, there are severe restrictions on persons to whom the information may be delivered and how it may be used.
 
 
 68
 Likewise, stringent restrictions were placed on the disclosure of tax return information to the Department of Justice. See Sec. 6103(h)(2).[16] With respect to non-tax civil or criminal cases, the Department of Justice must seek a court order. 26 U.S.C. Sec. 6103(i)(1).[17]
 
 All to be Reported to Congress
 
 69
 More than that, to assure public review of all discretionary disclosures, there is a stringent requirement, not only on the President, but on the IRS itself to report to Congress all applications for disclosure and actions taken. 26 U.S.C. Sec. 6103(g).[18]
 
 
 70
 Congress Increases Criminal and Civil Sanctions
 
 
 71
 And to all of these stringent requirements the Congress concluded that the current penalties ($1,000 fine, not exceeding one year in confinement) were too lenient. See S.Rep., p. 347, Bulletin, p. 385. "The committee decided that the present provisions designed to enforce the rules against the improper use or disclosure of returns and return information are inadequate. The committee decided that the criminal penalties for an [un]authorized[19] disclosure should be increased and that the situations to which they apply should be broadened to cover all situations in which returns and return information are treated as confidential." S.Rep., p. 347, U.S.Code Cong. & Admin.News 1976, p. 3777, Bulletin, p. 385.
 
 
 72
 The committee also decided to establish a civil remedy for any taxpayer damaged by an unlawful disclosure of returns or return information. The cause of action would extend to any disclosure of return or return information which is made in violation of section 6103. "[A person who willfully or negligently discloses] would be liable ... for actual damages.... Punitive damages would also be authorized ... [where disclosure is willful or a result of gross negligence].... The amendment provides that these damages would, in no event, be less than liquidated damages of $1,000 for each disclosure." S.Rep., p. 348, U.S. Code Cong. & Admin.News 1976, p. 3778, Bulletin, p. 386.
 
 
 73
 Disclosure of Criminal Investigation Not Necessary
 
 
 74
 With this stringent code of confidentiality, excused only by similarly stringent exemptions, we come then finally to whether the disclosure of criminal investigation was "necessary in obtaining information," which would "not otherwise [be] available." See section 6103(k)(6).
 
 
 75
 I would add to the cumulative literature of Barrett I, II, and III, only that to this day there has been no statement, either from on high in the Solicitor's office or the Department of Justice, or on the lower rungs of the IRS field agents, concerning why it was reasonably necessary to inform the patient interviewees that Dr. Barrett was under criminal investigation. All that the IRS could conceivably want from the inquiry was (i) the amount which the doctor charged the patient for the reconstructive plastic surgery, (iia) the amount that the patient paid, (iib) whether paid in cash or check, and (iii) the amount, if any, paid by an insurer. The fact that Dr. Barrett was facing criminal prosecution and punishment would have nothing to do with those inquiries. In any event, as the revelation was not necessary to obtain information, there is no need to question whether the information was "not otherwise available." The requirements of Sec. 6103(k)(6) were not met. The disclosure not being exempt, there was an explicit violation of Sec. 6103's demand for confidentiality.
 
 
 76
 The Powell Streamlined Procedure Not Imperiled
 
 
 77
 The Court seems to fear that if judicial recognition is given to demand of the Tax Reform Act for confidentiality and the stringent congressional prohibitions on unauthorized disclosure, the Internal Revenue Service will be thwarted in the effective enforcement of the IRS structure calling for billions and billions of voluntary, albeit with a little urging, taxpayer payments.
 
 
 78
 I cannot make too clear that I am not adding to the task of the district judge as he faces a Sec. 7604(b) application for enforcement of an IRS summons. The District Court must still follow the standards of Powell and the numerous decisions that have followed it. The majority embraces these precedents, as do I.
 
 
 79
 With all of the writing that has gone on in this protracted case, I cannot improve on what I said in dissent in disposing of the then majority's holding in Barrett I that there was "no indication ... that Congress intended Sections 6103 and 7431 to burden purportedly 'summary' enforcement proceedings with the time-consuming litigation that Section 6103(k)(6) determinations would entail." 787 F.2d at 961.
 
 
 80
 One wonders, however, where the burden really lies and just how heavy or time-consuming it truly is.
 
 
 81
 Unless acquiesced in, the IRS is already required to seek enforcement of its summonses in the District Court, where it must prove that it possesses a legitimate investigative purpose for the summons. Given that a hearing is already required to determine whether such a legitimate investigative purpose exists, it does not appear unreasonable to permit, or to require, a District Court to inquire at that proceeding into the breadth of the IRS summons, or the practices flowing from its use, can be tailored so as not to collide with a Congressional intent to protect the taxpayer against unnecessary invasions of his privacy. Much of the evidence pertinent to the existence of a legitimate investigative purpose for the summons will also be relevant to the determination of whether the disclosure of return information is necessary to obtain information that is otherwise not reasonably available. See 26 U.S.C. 6103(k)(6). The determination of whether there exists a legitimate investigative purpose for the summons is certainly not far removed from the determination of whether the practices flowing from its enforcement are an unnecessary invasion of privacy or threaten injury to a taxpayer's reputation.
 
 
 82
 Barrett I, 787 F.2d 958, 964. (Citations omitted).
 
 
 83
 Revelation Under Criminal Investigation is Damning
 
 
 84
 As I have stated before, the result of the Court's opinion, however, is that the District Court is required not only to enforce a summons without any statutory determination of necessity but to stand idly by while the IRS subjects a taxpayer to the ridicule and humiliation of being labeled as a criminal tax evader in the eyes of his fellows.
 
 
 85
 "This case presents a perfect illustration of the harm which will be wrought by adhering to [the Court's] result. Despite the instruction in the IRS Manual that 'caution must be exercised not [to] damage the reputation of the taxpayer by making [a mass mailing] either offensive or suggestive of any wrongdoing by the taxpayer.' 5 CCH, Internal Revenue Manual, p 9781 ch. 347 at 26,891," 787 F.2d at 964, this is exactly what Agent Hanson did.
 
 
 86
 Here the taxpayer is branded as a criminal suspect, with no criminal charge yet filed much less tried. The statement of criminal investigation was a disclosure of return information. The disclosure was not authorized. It was a violation of statutorily imposed confidentiality. The IRS having acknowledged that it would continue to include this statement in inquiries to patients, the taxpayer was entitled under the Tax Reform Act of 1976 to have this destructive and wholly unnecessary disclosure forbidden.
 
 
 87
 Possible Criminal Penalties Damage Suit Illusory
 
 
 88
 The Court holds that the only protection a taxpayer has for a violation of the Tax Reform Act of 1976, is possible criminal prosecution of the offending employee or a damage suit against the United States.
 
 
 89
 This affords no real protection to the affected taxpayer. Prospective criminal penalties lie in the almost limitless discretion of the prosecutor. Considering that the Department of Justice is the principal advocate against Texas Heart there is no realistic likelihood that criminal prosecution would be initiated against Agent Hanson. The damage suit remedy is equally fruitless.[20]
 
 
 90
 Even more than litigious frustration, the damage remedy--no matter how extravagant the damage award--cannot undo the harm wrought by the illegal disclosure. Here, revealing that the Doctor is under criminal investigation is of irreparable damage to his personal and professional reputation. Congress, in furtherance of its goal of strengthening the rights of taxpayers, intended that taxpayers should not be exposed to such damning, untried, unproved accusations.
 
 
 91
 In the words of Arthur Young, the Tax Reform Act of 1976 and Section 6103(k)(6) are the "sort of unambiguous directions from Congress" that support the mild conditions of Texas Heart.
 
 Agent Hanson Above the Law
 
 92
 The President must comply with Section 6103. The Congress and its committees must comply with Section 6103. The Department of Justice and all other executive departments or agencies must comply with Section 6103.[21]
 
 
 93
 But Agent Hanson need not.
 
 
 94
 Worse. A Court has no power to forbid his violation.
 
 
 95
 Texas Heart would prevent this. But alas, Texas Heart is no more, so I must dissent.
 
 
 96
 ALVIN B. RUBIN, Circuit Judge, with whom E. GRADY JOLLY, Circuit Judge, joins dissenting:
 
 
 97
 Respectfully, I conclude that this case is moot, and that we therefore lack jurisdiction. As the majority opinion notes, we have repeatedly held that an appeal from an order enforcing a summons becomes moot once a taxpayer complies with the summons. That rule is not altered by the fact that panels of this court have in the past "consistently treated the issues of (1) whether the enforcement order was properly rendered and (2) whether an enforcement order can be conditionally enforced as distinct issues on appeal."[1] We can and should reach the second question only if we conclude that the validity of the enforcement order is still an issue.
 
 
 98
 Whether "the conditional enforcement issue ... attack[s] the validity of the district court's order to enforce the summons"[2] is not the question. The validity of the enforcement order, conditional or not, can no longer be contested. The summons has been issued, it has been complied with, and whether this court should now modify an order that has already been obeyed is simply a dead issue.
 
 
 99
 The opinion dissenting from the decision on the merits argues that the issue is not moot because the issue was raised in the court, briefed and argued on appeal, and counsel for both sides seek its decision. That was the situation in Burke v. Barnes,[3] but the Supreme Court found that the adequacy of the presentation of the issue and the parties' avidity for its decision did not prevent the case from having become moot.
 
 
 100
 Because the majority opinion overturns our decision in Texas Heart, because even those of my colleagues who dissent are eager to consider the correctness of that opinion, and because we have convened the full panoply of an en banc court to consider this case, I understand the sentiment that we should decide the substantive issue it presents. My colleagues must indeed feel that, having thus laboriously marched up the hill, we should not now discard all that effort and march down again. Nevertheless, I would resist the temptation to expatiate on a question that is not truly before us.
 
 
 
 *
 Formerly Carolyn Dineen Randall
 
 
 **
 Due to his death on October 19, 1987, Judge Hill did not participate in this decision
 Judge Jerry E. Smith was not a member of the court when this case was submitted to the court en banc and did not participate in this decision.
 
 
 [1]
 The panel opinions in this case [United States v. Barrett, 787 F.2d 958 (5th Cir.1986) and United States v. Barrett, 804 F.2d 1376 (5th Cir.1986) ] were vacated by the court's action granting rehearing en banc without express provision, 812 F.2d 936. See Internal Operating Procedures following Local Rule 35
 
 
 [2]
 Barrett also argues that the fifth amendment Due Process Clause requires that a predisclosure remedy needs to be provided in this case. This issue, however, is being raised for the first time on appeal, and this court will only consider an issue raised for the first time on appeal if the issue is purely a legal issue and if consideration is necessary to avoid a miscarriage of justice. In re Goff, 812 F.2d 931, 933 (5th Cir.1987). "We will not allow a party to raise an issue for the first time on appeal merely because the party thinks that he or she might prevail if given the opportunity to try the case again on a different theory." Id. While this may be purely a legal issue, we do not believe a miscarriage of justice will result in this case from our declining to address it. Although there is some evidence that the government may contact Barrett's patients, and that if it does, that it may do so in a way that will violate section 6103; it may also be the case that the government will not contact them. Moreover, even if there is a violation, Barrett has an adequate remedy at law under 26 U.S.C. Sec. 7213 where he can sue for damages
 
 
 [3]
 All references in the text are to sections of the Code under 26 U.S.C
 
 
 [4]
 The government concedes that the proposed mailings to Barrett's patients contain "return information" as defined in 26 U.S.C. Sec. 6103(b)(2). There are various exceptions, however, to this general rule of nondisclosure of return information. See 26 U.S.C. Sec. 6103(c)-(o ). One such exception, for example, allows an IRS officer or employee to "disclose return information to the extent that such disclosure is necessary in obtaining information, which is not otherwise reasonably available." 26 U.S.C. Sec. 6103(k)(6). Whether the return information in this case comes within the section 6103(k)(6) exception is not at issue here. Rather, that inquiry is one that the district court would be required to make under Texas Heart in determining whether to conditionally enforce the summons. See Texas Heart, 755 F.2d at 482
 
 
 [5]
 Having done so, we requested the parties to supplement their briefs by addressing the mootness issue, which they have done
 
 
 [6]
 First Circuit: United States v. Arthur Andersen & Co., 623 F.2d 720 (1st Cir.) cert. denied, 449 U.S. 1021, 101 S.Ct. 588, 66 L.Ed.2d 483 (1980); United States v. Lyons, 442 F.2d 1144 (1st Cir.1971). Second Circuit: United States v. Deak-Perera Intern. Banking Corp., 610 F.2d 89 (2d Cir.1979). Third Circuit: Vesco v. SEC, 462 F.2d 1350 (3d Cir.1972) (analogous SEC subpoena case). Fourth Circuit: Kurshan v. Riley, 484 F.2d 952 (4th Cir.1973). Sixth Circuit: United States v. Patmon, 630 F.2d 458 (6th Cir.1980). Seventh Circuit: United States v. Kis, 658 F.2d 526, 532-33 (7th Cir.1981), cert. denied, 455 U.S. 1018, 102 S.Ct. 1712, 72 L.Ed.2d 135 (1982). Eighth Circuit: United States v. Orlowski, 808 F.2d 1283, 1287 (8th Cir.1986); United States v. Olson, 604 F.2d 29, 31 (8th Cir.1979); United States v. First National Bank of Sturgis, S.D., 587 F.2d 909, 910 (8th Cir.1978); Barney v. United States, 568 F.2d 116 (8th Cir.1978). Ninth Circuit: SEC v. Laird, 598 F.2d 1162 (9th Cir.1979) (analogous SEC subpoena case). But see Gluck v. United States, 771 F.2d 750, 753-54 (3d Cir.1985)
 
 
 [7]
 In fact, in Barrett II we expressly held that Dr. Barrett's claim that the district court improperly enforced the summons based upon an erroneous finding that the IRS possessed a legitimate investigatory purpose was moot because he complied with the summons. Id. at 1377-78
 
 
 [8]
 The government informed the court of this fact at oral argument
 
 
 [9]
 We point out that the issue of whether a district court can consider whether a violation of section 6103 is an independent ground to deny enforcement of a summons is not before this court. However, to contrast the situation that is before us in the present case, we point out that if it were before us this issue would be moot. This question relates to what factors a district court can consider in making its initial determination of whether to enforce a summons in its entirety. That is, for example, could the district court have completely denied enforcement of the summons in Barrett because the government was suggesting that it would violate section 6103? This court cannot, however, consider any factors relating to whether the district court's order enforcing the summons was proper once the taxpayer has complied with the summons. Cf. Sherlock, 756 F.2d at 1146. Since this contention is one that directly relates to the district court's decision of whether to enforce the summons in its entirety, we could not decide its propriety. As noted above in footnote 7, the opinion in Barrett II held that the issue of whether the district court properly ordered enforcement of the summons was moot based on the fact that Dr. Barrett complied with the summons. See Barrett II, 804 F.2d at 1377-78. Thus, we would have no jurisdiction to decide whether the district court should consider section 6103 in deciding whether to enforce a summons
 
 
 [10]
 Dr. Barrett has also cited S.E.C. v. ESM Government Securities, Inc., 645 F.2d 310 (5th Cir.1981), United States v. Wright Motor Company, 536 F.2d 1090 (5th Cir.1976), United States v. Newman, 441 F.2d 165 (5th Cir.1971), Mason v. Pulliam, 557 F.2d 426 (5th Cir.1977), Linn v. Chivatero, 714 F.2d 1278 (5th Cir.1983), United States v. Wyatt, 637 F.2d 293 (5th Cir.1981), and United States v. Davis, 636 F.2d 1028 (5th Cir.), cert. denied, 454 U.S. 862, 102 S.Ct. 320, 70 L.Ed.2d 162 (1981), as support for the proposition that a district court can conditionally enforce a summons. We have reviewed these cases and do not agree that they mandate Dr. Barrett's position
 
 
 [11]
 The Ninth Circuit has also confronted the issue of conditional enforcement. In United States v. Author Service, Inc., 804 F.2d 1520 (9th Cir.1986), the court relied on our decision in Texas Heart. No further reasoning was provided. Id. at 1525 ("Courts routinely modify summonses to protect taxpayers' interests. See, e.g., Dunn v. Ross, 356 F.2d 664, 667 (5th Cir.1966). This power has been construed to give a court the authority to condition enforcement of a summons on an IRS agreement to cease improper disclosures. Texas Heart Institute, 755 F.2d at 481.") Recently, in United States v. Zolin, 809 F.2d 1411 (9th Cir.1987), the Ninth Circuit simply followed its prior decision in Author Services, based on Texas Heart. Id. at 1417 ("A district court may, when appropriate, condition enforcement of a summons on the IRS' agreeing to abide by disclosure restrictions. Author Services, 804 F.2d at 1525 (citing United States v. Texas Heart Institute, 755 F.2d 469, 481 (5th Cir.1985))")
 
 
 [1]
 As does the court, see its n. 9, I find it unnecessary to determine whether a violation of Sec. 6103 is an independent ground to deny enforcement of summons. I therefore neither agree nor disagree with what is stated or intimated in n. 9
 
 
 [2]
 United States v. Powell, 379 U.S. 48, 85 S.Ct. 248, 13 L.Ed.2d 112 (1964)
 
 
 [3]
 As a general rule:
 Returns and return information shall be confidential, and except as authorized by this title--(1) no officer or employee of the United States ... shall disclose any return or return information obtained by him in any manner or in connection with his service as such an officer or employee....
 26 U.S.C. Sec. 6103(a).
 
 
 [4]
 (b) Definitions. For the purpose of this section--
 (1) Return.--The term "return" means any tax or information return, declaration of estimated tax ...
 (2) Return Information.--The term "return information" means--
 (A) a taxpayer's identity, the nature, source, or amount of his income, payments, receipts, deductions, exemptions, credits, assets, liabilities, net worth, tax liability, tax withheld, deficiencies, overassessments, or tax payments, whether the taxpayer's return was, is being, or will be examined or subject to other investigation or processing, or any other data received by, recorded by, prepared by, furnished to, or collected by the Secretary with respect to a return or with respect to the determination of the existence, or possible existence, of liability (or the amount thereof) of any person under this title for any tax, penalty, interest, fine, forfeiture, or other imposition, or offense, and
 (B) any part of any written determination or any background file document relating to such written determination (as such terms are defined in section 6110(b)) which is not open to public inspection under section 6110,
 but such term does not include data in a form which cannot be associated with, or otherwise identify, directly or indirectly, a particular taxpayer.
 26 U.S.C. Sec. 6103(b). (Emphasis added).
 
 
 [5]
 The Senate Report broadly defined the term return information:
 to include the following data pertaining to a taxpayer: his identity, the nature, source or amount of his income, payments, receipts, deductions, exemptions, credits, assets, liabilities, net worth, tax liability, tax withheld, deficiencies, overassessments and tax payments. It also includes any particular of any data, received by, recorded by, prepared by, furnished to, or collected by the IRS with respect to a return filed by the taxpayer or with respect to the determination of the existence, or possible existence, of liability (including the amount of liability) for any tax, penalty, interest, fine, forfeiture, or other imposition, or offense provided for under the code.
 Senate Report No. 94-938 Tax Reform Act of 1976 (hereinafter cited as "S.Rep."), reprinted in Internal Revenue Cumulative Bulletin, 1976-3 (hereinafter cited as "Bulletin"). S.Rep. p. 318, U.S. Code Cong. & Admin.News 1976, pp. 2897, 3748, Bulletin, p. 356. (Emphasis added).
 Of special importance are the words which immediately followed the above:
 Information as to whether a taxpayer's return was, is being, or will be examined or are subject to other investigation or processing is also to be considered return information.
 S.Rep. p. 319, U.S.Code Cong. & Admin.News 1976, p. 3748, Bulletin, p. 357.
 
 
 [6]
 The intent to strictly limit disclosure is reflected by the Senate Report:
 IRS officials and employees would be permitted, if no reasonable alternative exists, to make limited disclosures of return information in connection with an audit or investigation to the extent necessary in arriving at a correct determination of tax, liability for tax, or the amount to be collected, or otherwise in the enforcement of any provisions in the Code.
 S.Rep. pp. 341-42, U.S.Code Cong. & Admin.News 1976, p. 377, Bulletin, pp. 379-80.
 The report continues:
 In certain instances, it may be necessary for IRS personnel, in obtaining information with respect to a taxpayer from a third party, to disclose the fact that the request for information is in connection with an audit or other tax investigation of the taxpayer. In rare and extraordinary cases, it may also be necessary for IRS personnel in obtaining information from a third party to disclose additional return information, such as the manner in which the taxpayer treated on his return a transaction with a third party. Disclosures under this provision are to be made only in situations and under conditions specified in the regulations....
 S.Rep. p. 342, U.S.Code Cong. & Admin.News 1976, p. 377, Bulletin, p. 380. (Emphasis added).
 
 
 [7]
 See Judge Hill's original majority opinion, Barrett I, 787 F.2d 958 at 960, n. 2 which states:
 It is conceded by the government that the proposed mailings to Barrett's patients contain "return information."
 
 
 [8]
 See, e.g., my dissenting opinion Barrett I, 787 F.2d 958 at 963; and majority opinion Barrett II, 804 F.2d 1376 at 1378
 
 
 [9]
 See n. 3, supra
 
 
 [10]
 See Sec. 6103(k)(6), supra, p. 6
 
 
 [11]
 The Senate Report states:
 The statutory rules governing the disclosure of tax information have not been reviewed by the Congress for 40 years. Since that time a number of rules allowing disclosure of tax information to other government agencies have been established by executive order and regulation.
 S.Rep. p. 317, U.S.Code Cong. & Admin.News 1976, p. 3746, Bulletin, p. 355.
 
 
 [12]
 "A fourth goal of the committee amendment is to improve the administration of the tax laws bureau to strengthen taxpayers' rights and to make tax collection more efficient. The amendment makes long overdue changes in these areas." (Emphasis supplied). S.Rep. p. 3, U.S.Code Cong. & Admin.News 1976, p. 3440, Bulletin, p. 59. See also S.Rep. p. 7, Bulletin, p. 63
 In the Summary of the Administrative Provisions, the report stated:
 
 
 [2]
 It provides definitive rules generally maintaining the confidentiality of tax returns. (Title IX)
 S.Rep. p. 6, U.S.Code Cong. & Admin.News 1976, p. 3443, Bulletin, p. 62.
 The Report further indicates:
 The most significant administrative provisions are those which strengthen taxpayers' rights.
 The committee amendment provides definitive rules relating to the confidentiality of tax returns, an area where there has been much abuse in the past. It strictly limits disclosure of information from tax returns.
 S.Rep. p. 19, U.S.Code Cong. & Admin.News 1976, p. 3455, Bulletin, p. 75.
 
 
 [13]
 The Report further stated:
 It has been stated that the IRS probably has more information about more people than any other agency in this country. Consequently, almost every other agency that has a need for information about U.S. citizens, therefore, logically seeks it from the IRS. However, in many cases the Congress has not specifically considered whether the agencies which have access to tax information should have that access.
 S.Rep. pp. 316-17, U.S.Code Cong. & Admin.News 1976, p. 3746, Bulletin, pp. 354-55.
 
 
 [14]
 The Report further stated:
 The committee amendment provides that as the general rule returns and return information are to be confidential and not subject to disclosure except as further provided in the section. Only those regulations now in effect and subsequently promulgated by the Secretary which interpret a specific provision of Section 6103 are to continue to have force and effect after the effective date of this amendment. Consequently, those regulations promulgated under Presidential authority prior to the effective date of the amendment which do not interpret any specific provision of this section are no longer to have any force and effect after the effective date of this amendment.
 S.Rep. p. 318, U.S.Code Cong. & Admin.News 1976, p. 3749, Bulletin, p. 356.
 
 
 [15]
 The Senate Report states:
 Under the committee amendment upon the written request of the President, signed by him personally, disclosure of return and return information is to be made to the President and/or to certain named employees of the White House Office.
 S.Rep. p. 322, U.S.Code Cong. & Admin.News 1976, p. 3752, Bulletin, p. 360.
 
 
 [16]
 The Report further stated:
 The committee recognizes the need of the Justice Department to continued access to tax returns and return information in carrying out its statutory responsibility in the civil and criminal tax areas. While the committee decided to maintain the present rules pertaining to the disclosure of returns and return information of the taxpayer whose civil and criminal tax liability is at issue, restrictions were imposed in certain instances at the pre-trial and trial levels with respect to the use of third party returns where, after comparing the minimal benefits derived from the standpoint of tax administration to the potential abuse of privacy, the committee concluded that the particular disclosure involved was unwarranted.
 S.Rep., pp. 324-25, U.S.Code Cong. & Admin.News 1976, p. 3754, Bulletin, pp. 362-3. (Emphasis added).
 
 
 [17]
 The Senate Report states:
 The committee decided that the information that the American citizen is compelled by our tax laws to disclose to the Internal Revenue Service was entitled to essentially the same degree of privacy as those private papers maintained in his home. Present law and practice does not afford him that protection--the Justice Department and other Federal agencies, as a practical matter, being able to obtain that information for non tax purposes almost at their sole discretion.
 The committee decided, therefore, that the Justice Department ... should be required to obtain court approval for the inspection of a taxpayer's return or return information.
 S.Rep., p. 328, U.S.Code Cong. & Admin.News 1976, pp. 3757, 3758, Bulletin, p. 366.
 The committee decided that, although it is necessary to permit the disclosure of Federal returns and return information to other Federal and State agencies in certain situations for purposes other than the administration of the Federal tax laws, no such disclosure should be made unless the recipient agency complies with the comprehensive system of administrative, technical, and physical safeguards designed to protect the confidentiality of the returns and return information and to make certain that they are not used for purposes other than the purposes for which they were disclosed.
 S.Rep., p. 344, U.S.Code Cong. & Admin.News 1976, p. 3774, Bulletin, p. 382.
 
 
 [18]
 The Report further stated:
 Because the use of returns and return information for purposes other than tax administration has resulted in serious abuses of the rights of taxpayers in the past, and because the potential for abuse necessarily exists in any situation in which returns and return information are disclosed by the IRS to other Federal agencies and the States for purposes other than the administration of the Federal tax laws, the committee believes that it is necessary for Congress to review very closely the use of returns and return information and the extent to which taxpayer privacy is being protected. In order to permit that review, the committee decided to require that the IRS make certain comprehensive annual reports to the Joint Committee as to the use of returns and return information.
 S.Rep., pp. 345-46, U.S.Code Cong. & Admin.News 1976, p. 3775, Bulletin, pp. 383-84.
 
 
 [19]
 From the context of the total quotation it is evident that unauthorized disclosure was meant
 
 
 [20]
 Dr. Barrett's efforts met with opposition from the government requiring an appeal (and subsequent reversal) of the summary judgment in favor of the government. Barrett II, 804 F.2d at 1381
 
 
 [21]
 Section 6103 takes precedence over even the Freedom of Information Act. See, Church of Scientology v. Internal Revenue Service, --- U.S. ----, 108 S.Ct. 271, 98 L.Ed.2d 228 (1987)
 
 
 [1]
 837 F.2d at 1348
 
 
 [2]
 Id., 837 F.2d at 1348
 
 
 [3]
 --- U.S. ----, 107 S.Ct. 734, 93 L.Ed.2d 732 (1987)